## ASSOCIATED INDEMNITY CORPORATION v. WILSON. (No. 10562.)

Court of Civil Appeals of Texas. Dallas. Oct. 1, 1929.

Rehearing Denied Oct. 26, 1929.

Wilson & Biggers and Roy W. McDonald, all of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

VAUGHAN, J. This is an appeal from a judgment rendered in a compensation suit. Appellee was the defendant in the trial court and filed his cross-action to recover against appellant, under the Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309), for the death of his twelve year old son, Ernest Wilson, who was killed at 1 a. m. on August 21, 1927, while delivering milk in the city of Dallas, Tex. Appellee was awarded 360 weeks' compensation at $15.58 per week. Appellant give timely notice of appeal and filed suit to set aside the award. Appellee, in his cross-action filed in said suit, alleged the injuries and death of the said Ernest Wilson as the result of his fall from Metzger Bros.' wagon while he was delivering milk for and as an employee of said Metzger Bros. Appellee alleged that he is the sole beneficiary of the deceased minor, that he is therefore entitled to compensation for 360 weeks at $20 per week, and that payment thereof should be made in a lump sum. Appellant answered said cross-action by a general denial, denied that the deceased minor was an employee of Metzger Bros. at the time of his injuries, and alleged that, if the deceased minor had ever been employed by Metzger Bros., such employment was in violation of the Child Labor Law of the state of Texas (Pen. Code 1925, arts. 1573–1578a). Trial resulted in a judgment in favor of appellee for 360 weeks' compensation at $11.50 per week, the rendition of which is now before us, under appropriate assignments of error, for review and revision.

In answer to the special issues on which the cause was submitted, the jury found the following facts: That Ernest Wilson was an employee of Metzger Bros. at the time of his injury on August 25, 1927; that said injuries so received naturally resulted in his death; that Ernest Wilson was in the course of his employment as an employee of Metzger Bros. at the time and on the occasion he received said injuries; that the average weekly wages of Ernest Wilson at the time and on the occasion he sustained said injuries was $20 per week; that a manifest injustice would result to appellee in the event a lump sum payment of compensation is denied him.

There being sufficient evidence to support the above findings of fact by the jury, same are adopted as part of the findings by this court. In addition thereto we find, from the undisputed evidence, the following: That Metzger Bros., the employer of the deceased minor, Ernest Wilson, prior to and at the time said minor received his injuries, had obtained and there was in force a workmen's compensation policy issued by appellant; that as an employee of Metzger Bros. said Ernest Wilson was covered and protected by the terms of said policy; that Metzger Bros. was engaged in the dairy business; that the property upon which said dairy business was conducted consisted of about 500 acres of land south of and contiguous to the city of Dallas; that said city at that time had a population of 158,000, as shown by the last federal census; that Metzger Bros. owned and had on said land about 80 head of milk cows, with the following property located on said land, used by them in connection with said dairy business: Two 700-gallon capacity churns operated by machinery, propelled by electric motors and leather belts attached to said motors and shafts about 40 feet long, which carried about six belts; that there were eight pasteurizers in the same building, and milk was treated in large rotating vats by steam heat, operated by direct drive motors hooked together; that the milk was pasteurized by steam heat, applied on the inside of the vat or vessel containing the milk; that two or three trucks without guards to haul cans around were in the room where the milk was churned and pasteurized; that barns for work stock were located on the premises about 200 yards from the churn room; that there was a paint shop and a blacksmith shop on the premises, maintained only for the purpose of painting and repairing equipment used in connection with the said dairy business; that there was also an ice factory, operated for the purpose of manufacturing ice to be used in the operation of said dairy; that steam for pasteurizing milk was obtained from a boiler located about 50 yards from the building in which the churns and pasteurizers are located; that the boiler was heated with gas; that, in addition to the milk obtained from 80 cows owned by Metzger Bros., milk was purchased by Metzger Bros. from small dairies and other producers of milk in many sections of Dallas and adjoining counties; that all of the above equipment for churning and pasteurizing milk was used by Metzger Bros. for the purpose of conducting their dairy, in churning and pasteurizing milk, separating milk, making buttermilk, cottage cheese, and bottling milk, to be sold to consumers; that a machine was maintained and operated for the bottling of milk; that this machine automatically sealed the bottles, cut off the milk, and placed stoppers in the bottles; that a conveyer received and held the bottles, which was operated by an electric motor, the capacity of the bottling machine being about 60 bottles per minute; that there were several intricate parts to this machine; that a large metal tank, operated by a motor, was used for washing and sterilizing the bottles; that in sterilizing the bottles boiling water was used; that on said 500 acres the only business engaged in by Metz-

ger Bros. was that of a dairy, all of the machinery located thereon being used by them in the operation of that business; that on or about August 25, 1927, the date Ernest Wilson received his injuries, said minor was in the employ of Metzger Bros., was employed to do general work around the dairy, to do anything that was to be done when he was needed, which included helping the drivers in delivering milk; that the deceased minor, Ernest Wilson, was directed by Metzger Bros.' night foreman to assist an employee, Bill Smith, who operated a milk route for Metzger Bros., in the delivery of milk, and he was working under said instructions at the time he was injured, about 1 a. m., August 25, 1927, in the city of Dallas, while he was engaged in taking milk from the wagon to a customer and bringing back empty bottles, in the performance of his duties for Metzger Bros.; that at the time of his death Ernest Wilson was twelve years and nine months of age; that his mother was dead and his father, the appellee, is the only beneficiary under the Workmen's Compensation Act; that Ernest was the oldest of four sons of appellee.

We have carefully considered each of appellant's propositions upon which its appeal is predicated, and find that, in order to dispose of the many propositions urged, it is only necessary to review in this opinion the propositions presenting the following contentions: (1) That the deceased minor, Ernest Wilson, was employed by Metzger Bros., in violation of the Child Labor Law, in that (a) said minor was working in or about a factory containing dangerous machinery; (b) that he was engaged as a messenger in a city of more than 15,000 population; and (c) he was working at 1 a. m., in violation of the law prohibiting him being directed or being permitted to work between the hours of 10 p. m. and 5 a. m. (2) The submission of certain issues and instructions given in connection therewith.

■ Was said minor employed by Metzger Bros. to labor in or about a factory, workshop, or in messenger service, in violation of article 1573, Tex. Rev. Crim. Stats. 1925? Said article, in part, reads as follows: "Any person, or any agent or employé of any person, firm or corporation who shall hereafter employ any child under the age of fifteen (15) years to labor in or about any factory, * * * or in messenger service in towns and cities of more than fifteen thousand population, according to the Federal census, except as hereinafter provided, shall be deemed guilty of a misdemeanor; * * * provided that nothing in this act shall be construed as affecting the employment of children on * * * dairies. * * *"

If the business conducted by Metzger Bros., the employer of said Ernest Wilson, was a dairy, within the meaning of that term as used in said article 1573, then the employment of said minor by Metzger Bros. was not in violation of said article 1573. The word "dairy" is defined in Webster's New International Dictionary as follows: The place, room, or house where milk is kept and converted into butter or cheese; the department of farming or of a farm that is concerned with the production of milk, butter, and cheese. And in the Century Dictionary and Cyclopedia, published in January, 1899, is defined as: That branch of farming which is concerned with the production of milk and its conversion into butter and cheese; a house or room where cream and milk are kept and made into butter and cheese; a shop where butter, milk, etc., are sold.

The means of converting milk from its original state as obtained from the cow into butter, cheese, cottage cheese, buttermilk, and the separation of the cream from the milk, are to be presumed to have been in the mind of the lawmaking power, and reckoned with in passing the Child Labor Law, being chapter 4, comprising articles 1573–1578a, inclusive, Rev. Crim. Stats. 1925, and likewise, the character of machinery used to accomplish the changing of the form of milk into byproducts, and the character and use of machinery and equipment as employed by Metzger Bros. for the purpose of converting milk into such by-products, separating cream from the milk, sterilization of bottles, pasteurization of milk, bottling of milk for the general trade, as part of the equipment of a dairy, and that one so engaged in the changing of the form of milk was considered to be engaged in the dairy business, and was not regarded as being in the "factory business," as that term is commonly understood, namely, "a building or collection of buildings with its equipment or plant appropriate to the manufacture of goods; the place where workmen are employed in fabricating goods, wares and utensils." Webster's New International Dictionary. This is in accord with the well-recognized rule that, "The Legislature is presumed to act with a full knowledge of all facts upon which the legislation is passed, or to which it can be applied." Erskine v. Nelson County, 4 N. D. 66, 58 N. W. 348, 27 L. R. A. 696; Chesapeake & P. Tel. Co. v. Manning, 186 U. S. 238, 22 S. Ct. 881, 46 L. Ed. 1144.

We therefore hold that within the meaning of the term "dairies," as used in said article 1573, Metzger Bros. was, at the time said Ernest Wilson received his injuries, engaged in the dairy business, and that said minor was employed to work at a dairy.

■ Was said minor employed in messenger service in violation of the provisions of said article 1573? The deceased minor was not employed by Metzger Bros. in messenger service, but was employed to work in or about a "dairy"; part of his duties being to assist in the delivery of milk, which involved taking milk to the house of a customer, gathering empty milk bottles, and taking same back

to the milk wagon. This was not work performed in messenger service, but part of the work incident to the dairy business, which did not involve, in any respect, "messenger service," as that term is commonly understood. It is true that article 1575 embraces delivery as well as messenger service, the language being as follows: "It shall be the duty of every person, firm or corporation, their agents or employees, having in their employ or under their control, any child under the age of seventeen (17) years, doing a messenger or delivery business, or whose employees may be required to deliver any message, package, merchandise or other thing, before sending any such child on such errand, to first ascertain if such child is being sent or is to be sent to any place prohibited in Art. 1574. Failure or refusal to comply with this article shall subject any person, firm or corporation, their agents or employees, having the control of such child or children to the penalties provided in Art. 1574."

Article 1575 has no application to a child engaged in delivering the products of a dairy in a town of over 15,000 population, as such service is exempt by the provisions of article 1573, supra, but only applies to the sending of a minor to deliver any message, package, merchandise, or other thing, without first ascertaining if such child is being sent or is to be sent to any place prohibited by article 1574, supra, namely, "to any disorderly house, bawdy house, assignation house or place of amusement conducted for immoral purposes." The delivery business not being included in said article 1573, it is not one of the occupations that a minor under fifteen years of age is prohibited by said section from engaging in, as the terms "messenger service" and "delivery business" are not used interchangeably in reference to the same character of service. It is "messenger service" and not "delivery service" that is interdicted by article 1573, supra, and said article 1575 applies only to a minor in the employ of a person, firm, or corporation doing a messenger or delivery business sending a child under the age of seventeen years in their employ to deliver any message, package, merchandise, or other thing, failing before sending any such child on such errand to first ascertain if such child is being sent or is to be sent to any place prohibited by article 1574, supra. It is a violation of the provisions of article 1574 that said article 1575 deals with and has reference to, and has no reference to the provisions of article 1573, supra. Therefore, a minor employed to work in or about a dairy, delivering its products in a city of more than 15,000 population, is not in violation of either the provisions of articles 1573, 1574 or 1575, supra.

■ We are now brought to consider what we deem to be the most serious question presented by this appeal, namely, the alleged violation of the provisions of article 1576, Id., which makes it an offense for any person, firm, or corporation, their agents or employees, having in their employ or under their control any child under the age of fifteen years, to cause or permit such child to work between the hours of 10 p. m. and 5 a. m. The provisions of said act do not apply to the employment of children for farm labor, or to the hours during which children may work on farms. If it could be said that the dairy business is a species of farming, and that the word "farm" is a generic term applying to all character of farm pursuits, then the employment of a minor between the hours of 10 p. m. and 5 a. m. in or about a dairy, to perform work incident to the dairy business, would not be in violation of said article 1576, as same would come within the above exception.

This would find support in the definition of the word "dairy," viz., "the department of farming that is concerned with the production of milk, butter and cheese" is a dairy.

However, we are not content to determine this appeal adverse to appellant on the above holding. As we view this case, the rights of appellee rest upon more substantial ground, namely, the deceased minor's employment was legal, in that, he was employed to work by Metzger Bros. in and about the dairy business conducted by them; he was not employed to work between the hours of 10 p. m. and 5 a. m.; it was expected that his services would be performed in the daytime, and were usually performed between the hours of 6 a. m. and 12 noon.

Several days prior to his injuries, said Ernest Wilson had been directed by the night foreman to assist an employee of Metzger Bros., who had a milk route, in the delivery of milk. He was engaged in performing his services for which he was employed—in other words, he was acting within the scope of his employment, under the directions of one in authority acting for Metzger Bros.—at the time he received his injuries. The contract of employment being legal, and said minor acting within the scope of his employment at the time he was injured, although at a time when, under the law, he could not be employed to work, and it being the act of Metzger Bros. (acting through their foreman) by which the provisions of said article 1576 were violated, and the injuries received by said minor occasioned, said minor was at the time of his said injuries an employee of said Metzger Bros., and in the discharge of the duties enjoined upon him by his employment. Therefore said minor was not responsible for the act of Metzger Bros., which occasioned his injuries and incurred liability on the part of appellant to answer for the result of such injuries under its policy of compensation insurance. Appellant's relief did not rest in avoiding its liability to said minor, as an

employee of Metzger Bros., but in a cause of action over and against Metzger Bros. The real parties to the contract of insurance were appellant, as insurer, and Metzger Bros., as employer. In part, the benefits of the insurance accrued to Metzger Bros., in that, they were relieved from any liability on account of the injuries resulting to said minor, and in part to the benefit of said minor, in that he would receive through such insurance compensation, if he had survived, for the injuries sustained by him. The contract of employment of said minor being legal, the act of Metzger Bros., in violating the provisions of said article 1576, should not be permitted to defeat recovery by appellee, whose right to recover under said contract of insurance is identical with that of the said minor, if he had survived.

There is a further reason for holding appellant liable under its contract of insurance, namely, article 8309, section 1, R. C. S. 1925, the subdivision headed, "The term 'injury sustained in the course of employment,' as used in this law, shall not include," in part reading as follows:

"1. An injury caused by the act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public.

"2. An injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment.

"3. An injury received while in a state of intoxication.

"4. An injury caused by the employee's willful intention and attempt to injure himself, or to unlawfully injure some other person but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

It will be noted that subsection 4, supra, in clear and distinct terms declares that the term "injury sustained in the course of employment," after specifically stating the character of injuries that are not included in the term "injury sustained in the course of employment," shall include all other injuries of every kind and character having to do with and originating in the work, business, trade, or profession of an employer, received by an employee while in or about the furtherance of the affairs or business of the employer, whether upon the employer's premises or elsewhere. This certainly excludes the idea that any other kind and character of injury received would not be included, and just as certain that the particular class of injuries cata-

loged in subsections 1, 2, 3, and 4, supra, are the only injuries not included in the term "injury sustained in the course of employment."

It is our opinion that but one conclusion can be reached without doing violence to the plain evident meaning of the language employed by the lawmaker, namely, that all other injuries received by an employee, except the injuries specifically pointed out as not being included in the term "injury sustained in the course of employment," are included in that term. In other words, it is inescapable but that the term "injury sustained in the course of employment" includes all other injuries that an employee may receive, except those specifically named as not included. We therefore hold that the deceased minor was an employee of Metzger Bros., and that his injuries, which resulted in his death, were sustained in the course of his employment.

Appellant urges the proposition that the court erred in instructing the jury, by special issue No. 4, that it might consider any increase that the wages of the deceased minor might have been expected to undergo under normal conditions, because there was no evidence that such increase would take place. Bearing upon this phase of the case, we find the following facts to have been established by the evidence: Said Ernest Wilson was twelve years and nine months of age at the time of his injuries and death, had worked for Metzger Bros. between school terms, or in vacation, of the two years immediately preceding his injuries; was paid for every day he worked at the rate of $2 per day, regardless of the hours; that he generally worked from 6 a. m. to 12 noon; was a bright healthy boy in the seventh grade at school, and practically capable of performing the work of an adult employee at the time of his death; that adult employees of Metzger Bros., engaged in similar work that said minor was performing at the time of his death, made on an average of $35 per week.

Under the above facts we are of the opinion that the charge objected to was properly given under the authority of the following provisions of article 8306, § 12i, Texas R. C. S. 1925: "If it be established that the injured employee was a minor when injured and that under normal condition his wages would be expected to increase, that fact may be considered in arriving at his average weekly wages and compensation may be fixed accordingly."

The trial court instructed the jury, in special issue No. 4, that it should find the amount "which to you may seem just and fair to both parties." Appellant challenges the correctness of this charge, on the ground that it was in effect allowing the jury to guess as to what may seem fair to them, without reference either to the pleadings or evidence.

Section 12i of article 8306, supra, author-

izes the expected increase in the wages of a minor employee, under normal conditions, to be considered in arriving at his average weekly wages for the purpose of fixing the amount of compensation. Therefore the expected increase of wages of a minor, under normal conditions, may in part form the basis for fixing compensation, as much so as the actual salary received by a minor at the time injury was sustained.

It is only necessary to quote the plain language of section 1, first subsec. 3, of article 8309, Texas R. C. S. 1925, to present the conditions or grounds that must exist in order to justify average weekly wages to be computed "in any manner which may seem just and fair to both parties," namely: "When by reason of the shortness of the time of the employment of the employee, or other employee engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties."

From the above language, we gather that two reasons are specifically stated, namely: (a) The shortness of the time of the employment of the injured employee, and (b) the shortness of the time of the employment of other employees engaged in the same class of work in the manner and for the length of time specified in subsections 1 and 2 of said section 1, article 8309; and, in addition thereto, a general provision, not specifying any particular ground, but including other good and sufficient reasons meaning reasons other than the ones specifically stated.

Subsections 1 and 2, referred to in subsection 3, read as follows:

No. 1. "If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed."

No. 2. "If the injured employee shall not have worked in such employment during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed."

Under the established facts, neither by the provisions of said subsection 1 nor subsection 2 could the average annual wages or the average daily wages of the deceased minor have been ascertained, as the existence of the facts that would have authorized the ascertainment of the average annual wages or average daily wage under either of said subsections did not exist. Therefore it was only under the terms of said subsection 3 that the average weekly wages of said minor could have been computed, and as the two specified grounds in said subsection 3 existed, namely, "the shortness of the time of employment" of said minor, and the shortness of the time of the employment of other employees engaged in the same class of work, in the same manner and for the length of time specified in said subsections 1 and 2, it was impracticable to compute the average weekly wages, as defined by either said subsection 1 or 2, and, in addition to the existence of the grounds specified in subsection 3, there existed another good and sufficient reason why it was impracticable to compute the average weekly wages of said minor, as defined in subsections 1 and 2, namely, the provision of section 12i, art. 8306, supra, providing for the taking into account the expected increase, under normal conditions, of the wages of said minor in arriving at his average weekly wages.

We are therefore of the opinion that such expected increase in the wages of the minor furnished another good and sufficient reason for making it impracticable to compute the average weekly wages of said minor, as defined in said subsections 1 and 2. Therefore the court properly instructed the jury that, in ascertaining the amount of the average weekly wages of Ernest Wilson, it should be guided by what to them may seem just and fair to both parties. The jury was not allowed to guess as to what may seem just and fair to them without reference to either pleadings or evidence. It was alleged that at the time of the injuries to, and the death of, said Ernest Wilson he was a minor actually earning $14 per week; that he was a robust healthy boy; that he was alert, intelligent, and hard working; that he was engaged in the delivery of milk and in the operation of a milk wagon and milk delivery route for his employer; that, under normal conditions, his wages would have been expected to increase, and would have increased to $35 per week within the course of a short period of time; that the average weekly wages for the operation of a milk wagon and milk delivery route, in which line of work the deceased Ernest Wilson was engaged at the time of his injuries and death, was the sum of $35; that within the course of two or three months said Ernest Wilson could have and would have operated a milk delivery route.

In arriving at and formulating answers to special issues submitted, the court instructed the jury as follows: "You will answer the special issues submitted to you in charge by

the court as you find a preponderance of the testimony to be. In your deliberations you will not consider outside or extraneous matters, but only the testimony as adduced from the witness stand."

As a part of said special issue the jury was again admonished to make answer thereto solely from the evidence, as follows: "What sum of money, if any, do you find from a preponderance of the evidence to be the average weekly wages of Ernest Wilson at the time and on the occasion he sustained the injuries, if any, which to you may seem just and fair to the parties, both plaintiff and defendant?"

In our opinion, the evidence above set out as to the age, earning capacity, capacity for learning (of said minor), and the average weekly wages paid their employees by Metzger Bros., was sufficient to require the submission of special issue No. 4 and the explanation thereto, namely, "In your consideration of the foregoing special issue No. 4, you may take into consideration any increase, if any you find, that the wages of Ernest Wilson may have been expected to undergo under normal conditions."

Hence, we hold that the court did not err in so instructing the jury.

It is further contended by appellant that the court erred in submitting special issue No. 5, namely, "Do you find from a preponderance of the evidence that this is a special case wherein a manifest hardship and injustice would result unto the plaintiff in the event a lump-sum payment of compensation, if any, is denied him," on the ground that there was no evidence of any manifest hardship that would result. On this issue, appellee testified as follows: "It is a fact that I am asking for a lump-sum settlement in this case. If this money is paid to me in a lump-sum settlement, I will pay up my debts and buy me a home. I owe for the funeral expenses for the burial of my son, Ernest Wilson, that amounts to $189.00. No one else has ever paid the doctor bills for attending my son, Ernest Wilson, in his last illness. The nurse bill has not been paid, and that amounts to $6.00; I have employed White & Yarborough, attorneys at law, to represent me in this case. They also represented me before the Industrial Accident Board at Austin. I have agreed to pay them one-third of the recovery in this case. There are four members in my family at the present time. I have three boys living with me, their ages are 11, 9, and 6 years, respectively; they are brothers of my deceased son, Ernest. I am supporting them at this time. My children all attend school in the school months and they are dependent upon me for support. I have no other income other than what I make by daily labor. It has been about 13 or 14 months since the death of my son, and I have not been able out of my wages that I have made during that time to diminish or pay off any of those debts incurred during his last illness. If I am paid this sum in a lump-sum settlement I will buy a home for myself and those children."

The above evidence was sufficient to require the court to submit the issue objected to, under the following provisions of section 15, art. 8306, R. C. S. 1925, namely: "In special cases where in the judgment of the board manifest hardship and injustice would otherwise result, the board may compel the association in the cases provided for in this section to redeem their liability by payment of a lump sum as may be determined by the board."

This is one of the cases provided for in said section, viz., death resulted from the injuries received. Therefore said assignment and proposition based thereon are overruled.

All propositions not discussed have been carefully considered, and in our judgment being necessarily involved in the propositions discussed, and finding no reversible error in the rendition of the judgment appealed from, same is in all things affirmed.

Affirmed.