**AETNA CASUALTY & SURETY CO. v. DIXON.**

No. 13027.

Court of Civil Appeals of Texas. Dallas.

Nov. 2, 1940.

Rehearing Denied Nov. 30, 1940.

Lawther, Cramer, Perry & Johnson, of Dallas, for appellant.

Saner, Saner & Jack, of Dallas, Patterson & Patterson, of Austin, and Dougherty & Dougherty, of Mesa, Ariz., for appellee.

YOUNG, Justice.

Mrs. Ercel Dixon, claiming as statutory dependent under the Workmen's Compensation Law, recovered death benefits in the trial court, arising from the loss of her brother, while employed by the Geophysical Service, Inc., from which judgment, appeal is taken. Appellant insurance carrier filed suit to set aside an award of the Industrial Accident Board, favorable to Mrs. Dixon, the latter asserting claim in answer and cross-action that, after jury trial, became the basis of her final recovery of $17.30 per week over a period of 360 weeks, calculated in a lump sum. In substance, appellee's allegations for affirmative relief were, that Dave Sanders, a resident of Texas, had been employed by the Geophysical Service for more than one year prior to his death; service being rendered principally in Texas where the employment contract had been entered into; that about February 21, 1938, the employer

temporarily transferred Sanders to the State of Louisiana, where he continued to render the same type of services as theretofore performed in Texas, and for the same salary, viz., $125 per month; that afterward, on July 13, 1938, while Dave Sanders was rendering said services in the State of Louisiana, and working in the usual course of his employment, he was drowned; pleading that appellant and said employer had in possession all records as to the employment and wages of Sanders, dates and places of work, and notice was given for their production. Mrs. Dixon further alleged that her brother was a single man, having never been married; that she was a widow, with four minor children, receiving regular contributions from said Dave Sanders, on whom she was wholly dependent at the time of his demise. Definite allegations were made as to the average weekly wage of Sanders, in accord with the several sections of the statute, in which connection it was stated that: "Previous to the 1st day of September, 1937, Dave Sanders (deceased) was employed by Geophysical Service on a daily basis, working intermittently for said Geophysical Service, having worked for said Geophysical Service during the month of January, 1937, in or near Lufkin, Angelina County, Texas * * *"; and that, beginning September 1, 1937, he was employed on basis of $125 per month while at Harlingen, Texas, continuing on such salary until his death.

Issues 1 and 2 submitted to the jury, and their answers thereto, were: (1) "Do you find from a preponderance of the evidence that at the time of the death of Dave Sanders he was working in the course of the employment for which he had been hired at Lufkin, Texas, in January, 1937? Answer: Yes." (2) "Do you find from a preponderance of the evidence that while Dave Sanders was working under such employment, if any, entered into in the State of Texas, if you have found the fact so to be, the Geophysical Service, Incorporated, sent him to the State of Louisiana to work temporarily in the work in which he was engaged at the time of his death? Answer: Yes."

Remaining issues were as to the average weekly wage of Sanders (not in controversy), and that the evidence justified payment of compensation to claimant in a lump sum instead of in weekly installments. Aside from appellant's propositions 14 and 15, later to be noted, the main question on this appeal is, whether Dave Sanders was a Texas employee at the time of his death in Louisiana, and thereby entitled to the protection of the Workmen's Compensation Act (Vernon's Ann.Civ.St. Art. 8306, sec. 19). Claimant's pleading and the evidence are challenged in many propositions as insufficient to support issues 1 and 2; that the facts involved in said issues were undisputed; and that, as a matter of law, under the whole record, Sanders was not an employee who had been hired in this State within contemplation of the statute.

For a disposition of the law points presented, we are required to rather fully summarize deceased's employment record and all evidence relevant thereto. The employer, Geophysical Service, Inc., is a Delaware corporation, with only a formal office there, the main office, where all records, supplies and equipment are kept and from which all operations are directed, being in Dallas, Texas; maintaining no office in Louisiana, save the usual designated agent for service, required of all foreign corporations. The company operates pursuant to contracts with oil companies, under which extensive tests are made for oil in designated areas. After obtaining such an assignment, the employer's method of operation is to send a party of workmen—or organize one—to do the job; including skilled and regular workers already employed, and new help from time to time as needed. A representative of the oil company (contractor) is usually with the party to point out particular spots for exploration within the given area. When a job is finished, Geophysical Service orders all equipment back to Dallas, or transferred to another locus. Employer's party of workmen is thus constantly moved from place to place in doing the work it has agreed to perform. Any field party, sent to a certain place, requires a base of operations, so a small field office is opened for that purpose, usually in the town near where the workmen are temporarily operating. When the contract is completed in one locality, the field office is then moved up to where the crew has the next job, and used, generally, to provide the party with living accommodations. The company warehouse is at all times maintained in Dallas.

Relative to the service record of Dave Sanders, Mr. Edwards, assistant treasurer of the employer, alone testified, and from the original pay roll sheets and other data

in the main office. Evidence from such source revealed that Sanders was first employed by Geophysical Service, Inc., for two days near Lufkin, Texas, as recorder's helper, with a field party there, on a daily wage, the last day of such service being January 26, 1937. He next appeared on the pay roll February 18, 1937, at Houma, La., where a field operation was being conducted, working nine days that month on a per diem basis, as recorder's helper; and continued to be so employed until April, the party then moving to Harlingen, Texas. The next ten months were spent in that vicinity, Sanders working full time and paid by the day until September 1, when he was put on the Dallas pay roll at a fixed salary of $125 per month, in vouchers from the main office, drawn on a Dallas bank. Sanders remained on such permanent pay roll and at such wage until his death in July, 1938. On February 18, 1938, upon instructions, he reported at the Dallas office, was furnished transportation with orders to join a field party at Hammond, La. In this interim, he was paid regular salary and expenses. The employer's field party, to which Sanders was attached, operated near Hammond and Baton Rouge, La., until June, 1938; then transferred to a point near New Orleans, where he was drowned in the course of employment. His field party (No. 316) moved from the New Orleans location to Texas in December; then operated in Arkansas and Missouri, and finally disbanded in Dallas about March 15, 1939.

According to appellee, Mrs. Dixon, her brother was Texas-born, first living near Gilmer, and was never outside the State except on the two occasions in Louisiana, while employed by the Geophysical Service. Appellee made no claim for death benefits in Louisiana, but relies solely upon Texas laws for recovery thereof.

Sec. 19, commonly known as the "extraterritorial" provision of Art. 8306, allows compensation for injuries received outside the State, by an "employee, who has been hired in this State", under conditions set forth in the statute. It is well settled that such section serves to extend the protection of the Workmen's Compensation Law to Texas employees who are incidentally or temporarily sent out of this State by their employer. A major contention of appellant is, that the first two days of labor rendered by Sanders near Lufkin, Texas, to the Geophysical Service, Inc., un-

der the undisputed facts, bore no relationship to the continuity of an employment which began in February, 1937, at Houma, La., and ended with Sanders' death in the same state some seventeen months later; that he was a Louisiana employee of his company, temporarily in this State, so far as the Texas sojourn was concerned, and had returned to the domicile of his original employment at the time of his tragic ill fortune. The argument, in other words, is that, indisputably, in the inception of deceased's employment at Houma, La. (February, 1937), which continued to the end, there was no evidence of a contemplated performance in Texas, hence he was at all times an employee of such adjoining state, and protected, if at all, by the compensation laws of that jurisdiction. The evidence does not directly disclose the connection between the January, 1937, employment of Sanders at Lufkin and his reappearance upon the pay roll at Houma, La., some three weeks later—whether same was a mere coincidence, or resulted from a previous understanding. Appellant urges, with vigor, that under the testimony of Mr. Edwards (the Geophysical Service officer), Sanders was a Louisiana employee, in his sworn statement that such employee was hired in Louisiana on February 18, 1937, and prior to that date, so far as he knew, Sanders had not been sent to Louisiana by the company. Edwards, however, did not assume to testify from first-hand knowledge, but from office records in his charge, as appears from the answer of this witness on re-direct examination, viz.: "As I recall my testimony, I said that he (Sanders) worked in January near Lufkin and then later on, February 18 was the time, I think, he reappeared on the pay roll near Houma, Louisiana, and at Hammond, Louisiana, and during that time he was not paid and I presume he was not working. Q. Those were separate employment contracts? A. I don't know what they were, but they were separate periods in which he worked."

Absent direct evidence on the point, we believe a relationship of employer and employee on a day to day basis can be inferred from the pay roll sheets, whereby Sanders' second date of employment bears sequence to the first. Certainly, if the two localities were in Texas and not across a state line, there would be little logic in appellant's assertion that an interval of several weeks was sufficient to break the continuity of deceased's day to day employment

with the subscriber. Moreover, it being the custom of such employer to transfer its crews of workmen from place to place, and there being no evidence of a new contract entered into by Sanders in Louisiana, it can be presumed in law that the relationship entered into between the parties a few weeks previously at Lufkin, Texas, continued in force and effect when he again became a "recorder's helper" in such other state: "It is a general rule, with wide applications, that where the existence of a status or a state of things, a personal relation or a custom is once established, it is presumed that such status, etc., continues until the contrary is shown, or until a different presumption is raised from the nature of the subject in question." 17 T.J., Evidence—Civil Cases, § 62, p. 255; 20 Am.Jur., § 207, p. 205; Vernon's Ann.St. Art. 3713, Evidence, Rule 12, Note 18.

But, if we be mistaken in this, still we think it fairly deducible from the entire record that Dave Sanders had acquired the status of a Texas employee when he was sent by Geophysical Service to Louisiana about February 21, 1938, in the course of which employment, and within twelve months, he met his death. Deceased was a resident of Texas, first hired by the subscriber at Lufkin, Texas, in January, 1937, next appearing on the company's pay roll the following month in Louisiana, with no indicia of a new employment contract in said state. After a few months' labor, he returned to Texas, working constantly for his company at Harlingen and Edinburg; on September 1, 1937, placed upon the permanent pay roll with regular monthly salary thereafter; and, following a period of ten months' service in Texas, he was sent to Louisiana on work clearly proven as temporary, when he was drowned. The rule announced in Texas Employers' Ins. Ass'n v. Volek, Tex.Com. App., 69 S.W.2d 33, 35, regarding liability in extraterritorial cases, applies with peculiar aptness to such facts. The Court, through Judge Critz, there said: "It will be noted that the statute only purports to cover 'an employee who has been hired in this State.' This clause certainly does not have reference to the place where the hiring was originally made. The primary purpose of our Compensation Law is to protect our own workmen. The purpose of the extraterritorial provision is to protect, under our law, *employees who are such in this state under some contract of hiring,* and who are incidentally or temporarily sent out of this state to perform labor or services." (Italics ours.) The test just stated has been consistently applied in later decisions of our Supreme Court; Fidelity & Casualty Co. of New York v. McLaughlin, 134 Tex. 613, 135 S.W.2d 955; Southern Underwriters v. Gallagher, Tex.Sup., 136 S.W.2d 590.

Appellant urges a want of evidence to justify the jury verdict for appellee in a lump sum. We think their finding in this regard has sufficient support in the facts, which show Mrs. Dixon to be a widow, with four dependent minor children, and no other income save $45 per month for her own labor during eight months of the year; has bills that she is unable to pay; rents a small board house, and plans to use the lump sum to purchase a home for herself and family, and provide adequate education for the children,—which objects, as appellee testified, cannot be accomplished through weekly payments; 45 T.J., Workmen's Compensation, § 226, pp. 682–685; Associated Indemnity Corporation v. Wilson, Tex.Civ.App., 21 S.W.2d 314, writ refused; the particular matter being largely within the discretion of the trial court. Millers' Indemnity Underwriters v. Green, Tex.Civ.App., 237 S.W. 979, writ refused.

Fundamental error is urged by appellant in that, no jury finding established a filing of claim by appellee within the six months' period, or good cause for failure to comply with the statute, though the issue was raised by denial under oath. The judgment recited that, from the undisputed facts, Ercel Dixon had duly filed her claim with the Industrial Accident Board within six months after the death of Dave Sanders. Appellant made no request for the submission of any issue on the point; and neither in objections to the court's charge nor in motion for new trial did it complain of failure to submit the question. The two letters received by the Industrial Accident Board from appellee, well within the time limit of six months, amply met the requirements of the law; Art. 8307, sec. 4a; the writings embracing all facts necessary to constitute a timely and proper claim; 45 T. J., § 266, p. 746. Hence there was no conflict in such particular for the jury to pass upon.

A thorough examination of this record indicates no reversible error and the judgment of the trial court is affirmed.

Affirmed.