JAMES FLOYD HALE V. TEXAS EMPLOYERS INSURANCE ASSOCIATION.

No. A-2971. Decided May 9, 1951.
Rehearing overruled June 6, 1951.
(239 S. W., 2d Series, 608.)

*Ratliff, Conner & Walker* and *L. D. Ratliff*, all of Spur, for petitioner.

The Court of Civil Appeals erred in disregarding the finding of the jury and in holding that plaintiff did not occupy the status of a Texas employee at the time of his injury in New Mexico; and in holding that the extra-territorial provision of the Texas Workmen's compensation law does not apply to a day to day worker, such as plaintiff in this case; also in its holding that the evidence in this case established that plaintiff did not, as a matter of law, occupy the status of a Texas employee, incidentally or temporarily sent out of the State to perform labor or service for his employer. Southern Underwriters v. Hodges, 141 S.W. 2d 707; Texas Emp. Ins. Assn. v. Tucker, 165 S.W. 2d 780; Employers Mut. Lia. Ins. Co. v. Evins, 211 S.W. 2d 359.

*Crenshaw, Dupree & Milam* and *Tom A. Milam,* all of Lubbock, for respondent.

The Court of Civil Appeals correctly held that plaintiff's injuries, sustained while employed near Eunice, New Mexico, were not compensable under the extra-territorial provisions of the Workmen's compensation law of Texas. St. Louis, S.W. Ry. Co. v. Griffin, 106 Texas 477, 171 S.W. 703; Aetna Cas. & Sur. Co. v. Dixon, 145 S.W. 2d 620; American Emp. Ins. Co. v. Williams, 127 Texas 466, 94 S.W. 2d 1147.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

Petitioner, employee, sues respondent, insurer, for compensation under the Texas Workmen's Compensation Law on account of injuries suffered in New Mexico, claiming the right to recover by reason of the extraterritorial provisions of the statute, Section 19 of Article 8306 of the Revised Civil Statutes,

with its amendments, as appearing in Vernon's Annotated Civil Statutes.

In addition to issues usually submitted in Workmen's Compensation cases the trial court submitted to the jury this issue:

"Do you find from a preponderance of the evidence that at the time the plaintiff, Hale, sustained an injury, if he did, on July 10, 1949 near Eunice, New Mexico he was then occupying the status of a Texas Employee for the Warren and Bradshaw Drilling Company under his contract of hire, if any, of April, 1949? Answer, He was or He was not."

The jury answered "He was." Judgment was rendered in favor of petitioner against respondent for compensation at the rate of $25.00 per week for a period of 401 weeks, in a lump sum of $8,412.93.

As is apparent from the special issue above quoted and the opinion of the Court of Civil Appeals, both the district court and the Court of Civil Appeals considered the question whether petitioner occupied "the status of a Texas employee" to be the controlling question in the case. The Court of Civil Appeals considered only that question and, holding that according to the undisputed evidence petitioner did not occupy the status of a Texas employee, reversed the trial court's judgment and rendered judgment for respondent. 237 S. W. 2d 769.

We set out the substance of the evidence as to the employee status of petitioner, most of it being taken from his testimony.

Warren and Bradshaw Drilling Company, the employer, is engaged in drilling oil wells in several states, including Texas. Petitioner is an oil field worker described as a "roughneck". He is a resident of Texas and, with his family, lived for about three years in Lubbock, and later in Spur, and during the year immediately preceding his employment by the Warren and Bradshaw Drilling Company he worked at several places in the oil fields of West Texas, except that for approximately three months he worked near Eunice, New Mexico. At the time when he was working on the well near Levelland hereinafter referred to petitioner was living with his wife and three young children in Levelland, his oldest child being in school there. When this suit was filed and at the time of the trial petitioner was a resident of Spur, Texas.

On April 1, 1949, petitioner was employed at Levelland,

Texas, to work for the Warren and Bradshaw Drilling Company on a well then being drilled or to be drilled 12 or 14 miles from Levelland. He was employed by John Acton, who was a driller for that company, to work as a "roughneck" on Acton's crew, which consisted of the driller and three other men who were employed and directed by the driller. The driller took his orders from the "tool pusher".

Petitioner was employed to work by the day, eight hours a day for seven days in the week, to be paid $1.50 an hour. He asked Acton whether the job would be temporary or permanent, and Acton answered that as far as he knew it would be permanent if petitioner made "the right type hand". There is no evidence of an agreement of employment for any definite time. The employer's division drilling superintendent and its "tool pusher" testified that "roughnecks" were paid only when they worked, that they worked for whatever days the driller wanted them to work, that the "roughnecks'" job lasted from the time they were hired until they were "laid off", and that no worker was paid for standing by when he was not working. Hubbard, the "tool pusher", further testified, however, that whenever a crew of a driller and "roughnecks" was "bumper off a job" or "laid off" a job for any reason, and he knew that another well was going to be drilled within a few days or a few weeks, he would tell them about the well and "try to keep them to work on that well", and that this was done because they wanted to keep experienced hands.

Petitioner worked on the well near Levelland from April 1 until April 22, 1949, when he and the other "roughneck" members of Acton's crew were "bumped" and their places were taken by drillers who had seniority and came from another well. Petitioner testified that the "tool pusher" came to the well and told them that they were "bumped", saying that he was sorry, but he had to keep his hands and drillers and "that none of us were fired, we were laid off temporarily". After the "roughnecks" were "bumped" Acton, the driller, continued to work on the well, not as a driller, however, but as a "roughneck".

Petitioner testified that at the time when he was "bumped" he talked to the "tool pusher", in the presence of the driller Acton, and told him he had a child in school and wanted to stay if he thought they would start a well soon in another location nearby, but that if there was doubt in his mind he would like to make a change as he did not have much money, and that the

"tool pusher" told him he was "pretty sure" that they would "start back up" in the neighborhood in two or three weeks, that he could go to work on his same job and they would be glad for him to stay with them. Testifying further, petitioner stated positively that at the time he was "bumped" he was told in a conversation with Acton and Hubbard, the "tool pusher", that they would have a rig start up soon and that he was going to work for them and to hold himself in readiness to go back to work. Hubbard, the "tool pusher,' testified that at the time the "roughnecks" were "bumped" he had in mind the location of a Beasley well No. 2 that they thought would "start up" in about a week in that neighborhood, and that he told Acton, the driller, that if the members of his crew would "hang around" they could go to work on that rig. The Beasley well was not begun until about three months later, which apparently was after petitioner was injured while working on a well near Eunice, New Mexico.

After staying at Levelland two or three weeks, petitioner told Acton that, because he had no money, he wished to go to Synder and pick up a few temporary jobs "until the rig gets ready on another location" and that he would return whenever Acton called him. To this Acton agreed, and petitioner went to Synder, where he worked for three different employers for several days each, a total of 16 or 17 days. While petitioner was working at Snyder Acton came to Snyder and told petitioner he wanted him to go to work with him on a wild cat well to be drilled at Guthrie, Texas, and petitioner agreed to go there. A few days later Acton returned and told petitioner he had been transferred to Eunice, New Mexico, and asked petitioner to go with him, telling him that the transfer was temporary, that it would be a short job of six or seven weeks, and that on its completion they would return to the neighborhood of Levelland and Whiteface and work on a well to be drilled there. Acton told petitioner he was to go back to work as a "roughneck" and for the same pay and for the same hours as before. Pursuant to this conversation petitioner went to Eunice, New Mexico, on about July 1, and started working for Warren and Bradshaw Drilling Company on July 9, there being a delay in the arrival of the rig. He worked all of July 9 and was working on the 10th when he suffered the injury which is the basis of this suit.

Petitioners testified that he received no compensation from Warren and Bradshaw Drilling Company from April 22 to July 9, and that from April 22 to July 1 he was not subject to control

by that company. He added that he was "temporarily laid off" during that period and could have gone to work for another drilling company, and that while he was not required to go back to work for Warren and Bradshaw Company, he felt obligated to do so. He testified that such "lay-offs" were customary in the oil field, the work of oil field workers not being steady but interrupted between jobs. Hubbard, the "tool pusher", also testified that "roughnecking" in the oil fields is not steady employment.

■ Section 19 of Article 8306 in very simple terms provides that "if an employee, who has been hired in this State, sustain injury in the course of his employment he shall be entitled to compensation according to the Law of this State even though such injury was received outside of the State." Other parts of the article relate to the county in which the suit may be brought and to the requirement that the injury to be compensable must have been suffered within one year from the date when the employee leaves the state. If the language quoted is taken literally, petitioner very clearly is entitled to the benefits conferred by that section of the statute. But the section has been subjected to construction in several decisions of this Court.

In Texas Employers' Insurance Ass'n v. Volek, (Com. App.) 69 S. W. 2d 33, the opinion recommending the affirmance of the judgments of the district court and the Court of Civil Appeals in favor of the surviving parents of Volek, the employee, who was killed in another state, is based upon the conclusion from the entire record that "while he occupied *the status of an employee* of Abercombie Company *in Texas,* he was sent or induced by such company, through its duly authorized agent, to go temporarily to Louisiana to perform services for it." (Emphasis added.) The opinion expresses the view that the primary purpose of the statute is to protect "our own workmen" and that the purpose of the extra-territorial provision is to protect employees who are such in this state and who are "incidentally or temporarily" sent out of the state to perform labor. Volek, under a contract of hire from day to day, had worked for Abercombie Company on a well in Texas for several months until October 3, 1928, when the well was completed and he and all of the men were "laid off". He remained idle from that time until October 12, 1928, receiving no pay. Abercombie Company contracted to drill a well in Louisiana and on October 12, 1928, the company gave Volek one day's work cleaning up around the rig and boxing the tools for shipment to Louisiana, and on the same day he was employed by the company to go to

Louisiana to work on the well to be drilled there. Volek went to work on the well in Louisiana on October 20, 1928, and was killed while working there on December 21, 1928.

This Court, in Texas Employers' Insurance Association v. James, 131 Texas 605, 118 S. W. 2d 293, denied compensation to the employee on the ground that his employment in Texas was completely terminated before the contract of hire to work in Pennsylvania, where he was injured, was made. James was employed as a worker in Texas during June and part of July, 1930. The work in Texas was terminated on July 21, 1930, and at about that time James was hired by the employer company to work for it in Pennsylvania. His employment there did not in fact begin until he reached Pennsylvania about August 1, 1930, and he was injured while he was working there on August 11, 1930.

The James case was expressly overruled by Travelers Insurance Company v. Cason, 132 Texas 393, 124 S. W. 2d 321, the Court stating in its opinion that the James case was in conflict with the Volek case and that the facts in the Cason case brought it directly under the rule announced in the Volek case. The opinion was written in refusing an application for writ of error. after the Court of Civil Appeals had affirmed the trial court's judgment awarding compensation. The facts of the Cason case as stated in the opinion are: Cason for several years prior to May, 1936, had worked for the Vilbig corporation as a common laborer, his employment being from week to week and the employer having the right to discharge him at any time. While he was thus employed in Texas, the Vilbig corporation asked him to go to Virginia, where it had another road contract, to work for it there as a dump foreman. The corporation paid his expenses in going to Virginia, but his pay for work stopped when he ceased to work in Texas, and he was not paid for work in Virginia until he actually went to work there. There was no connection between what the corporation was doing in Texas and what it was doing in Virginia, except that in both states it was constructing roads. Cason was injured while working in Virginia within less time than a year after he went to work there. Neither the opinion of this Court nor that of the Court of Civil Appeals in the Cason case shows that Cason's employment to work in Virginia was temporary or that it was incidental to his employment in Texas.

In Fidelity & Casualty Company v. McLaughlin, 134 Texas 613, 135 S. W. 2d 955, the insurer insisted that McLaughlin at

the time of his injury in Louisiana did not occupy the status of a Texas employee incidentally or temporarily sent to Louisiana to work there. The Court quoted the rule stated in the Volek case, announced its adherence to the construction there given the statute, and held that the trial court "was justified in finding" that the employee at the time of his injury was protected under Section 19 of Article 8306, although, to use the language of the opinion, "we are frank to say that there is testimony in this record * * * which might have justified a finding * * * that plaintiff did not occupy the status of a Texas employee." The opinion states that the evidence on the question is conflicting and that the Supreme Court is without authority to disturb the trial court's findings. The evidence stated in the opinion as sustaining those finding is this: McLaughlin resided in New Iberia, Louisiana, and went to Houston, Texas, seeking employment by Phoenix Engineering Corporation. He was given employment and on that day worked about an hour and 15 minutes at the company's warehouse in Houston. It was agreed that his wages would be fifty cents an hour, and no special hours were agreed upon except that he would come to work early and stay late at night. Nothing is said of any agreement for employment for any definite time, and nothing further about the evidence except the statements that "this record justifies the conclusion that, within a very short time after the above transaction had been had, plaintiff was sent by Phoenix Engineering Corporation to New Iberia, in Louisiana, to work in its warehouse there located", and that the record shows that plaintiff was injured while working in the course of his employment in Louisiana, "and that plaintiff's employment in Louisiana could be classed as temporary." Neither the opinion of this Court nor the opinion of the Court of Civil Appeals in the McLaughlin case sets out any evidence showing a relation between the Texas employment and the employment in Louisiana, and no evidence is mentioned in either opinion to support the statement that the employment in Louisiana "could be classed as temporary".

The judgment rendered by the Court in favor of the insurer in Southern Underwriters v. Gallagher, 135 Texas 41, 136 S. W. 2d 590, is based upon the Court's conclusion that the undisputed facts show that Gallagher "never, in any sense, occupied the status of a Texas employee prior to leaving the State". The opinion repeats the construction given to Section 19 in the Volek case and in the McLaughlin case, and expressly holds that before the section of the statute "can be applied in favor of an employee injured out of this State, it must be shown that he occupied the status of a Texas employee leaving the State",

and this even though the contract to work in the other state is made in Texas. It is said further in the opinion, in connection with a reference to the facts in the Volek case, that because Gallagher never did any work in Texas for the employer before the time when he went to work in New Mexico, he cannot be said to have been a Texas employee of that company, "simply laid off for a time", when he was sent to work in New Mexico. The facts are these: The employer was drilling a well or preparing to drill in Texas near Pecos and a well in New Mexico near Jal. Gallagher never did any work for the company on the well near Pecos or elsewhere in Texas. He talked to an officer of the company at Kermit, Texas, and was told to report for work in Jal, New Mexico, the next day, and was injured while working there. The officer who instructed Gallagher to report for work at Jal told him that the company was planning to drill a well in Pecos County, Texas, and that when the well was begun he would be transferred from New Mexico to work on the well in Pecos County.

The material facts in Covington v. Associated Employers Lloyds, 195 S. W. 2d 209, application for writ of error refused, are the same as those in the Gallagher case, which it follows.

The United States Court of Appeals for the Fifth Circuit, in Associated Indemnity Corporation v. Scott, 103 Fed. 2d 203, reluctantly following the James case, first reversed and remanded the trial court's judgment awarding compensation, but after the James case was overruled by the Cason case, the Court on rehearing affirmed the trial court's judgment. The employee, Scott, who was employed from job to job and day to day by a drilling contractor, worked for several days on a rig at Corpus Christi, Texas, and after the well there was abandoned on August 10 and on notice from his foreman, he reported for work on another well at Ringgold, Louisiana, on August 14, was placed upon the pay roll and went to work. He was injured there after working 40 days. The employment and work in Texas were completely terminated before Scott left the state to go to Louisiana, and during the interval between the completion of the work in Texas and the beginning of the work in Louisiana he received no pay. The proof showed that the oil field workers from day to day were not carried on the pay roll between jobs, but that it was customary for the "tool pusher" to speak to them while still at work about reporting to the next job for work, and their employment and pay would start when they actually began work on the new job.

The foregoing decisions have been discussed in some detail for the purpose of explaining the construction that the Court has placed on Section 19 of Article 8306 and the application made of that section of the statute to the facts of the several cases. All of those decisions seem to be in accord on the point that the employee, to be entitled to the benefit of the extra-territorial provision of the statute, must have acquired the status of a Texas employee. This because the entire statute is intended for the benefit of Texas employees and because industry in Texas should not have the burden of providing insurance for employees of other states. None of the decisions has undertaken to define the meaning of "status of a Texas employee". It is settled by Southern Underwriters v. Gallagher, 135 Texas 41, 136 S. W. 2d 590, that one who has not in fact done any work in Texas for his employer before being hired to work in another state cannot be said to have acquired the status of a Texas employee and is not entitled to the benefits of the statute.

In the Volek case, 69 S. W. 2d 33, it is said that the purpose of the extraterritorial provision of the statute is to protect employees who are such in this state and who are "incidentally or temporarily" sent out of the state to perform labor, and that expression has been copied in later decisions. But in applying the statute, the requirement that the employment in the other state must be incidental to the Texas employment or temporary seems to have been disregarded. See, for example, Travelers Insurance Company v. Cason 132 Texas 393, 124 S. W. 2d 321; Fidelity & Casualty Company v. McLaughlin, 134 Texas 613, 135 S. W. 2d 955; Associated Indemnity Company v. Scott, U.S.C.A., 5th Cir., 103 Fed. 2d 203.

The decisions, in applying Section 19 of Article 8306, have not held complete continuity in employment or in work to be necessary to the maintenance of status as an employee. This is true as to continuity between employment or work in Texas and employment or work in the foreign state and as to continuity of employment or work in Texas and as to continuity of employment or work in the foreign state. Clifford J. Roberts, commenting on the decisions as to the extraterritorial application of the Texas Workmen's Compensation Statute, expressed this conclusion with reference to what is held about continuity between the work in Texas and the work in the other state:

"The Texas work is not required to be related to the job performed out-of-state, and apparently the only connection between the Texas work and the work out-of-state that is required is

that the work in the other state be of the same general character as that done in Texas. Thus, an extension to the holding of the Volek case has been added. Apparently the only restriction attached is that the period of time intervening not be too long and that there be no intent to sever the employee-employer relationship." 21 Texas Law Review, pp. 430, 439.

In the Volek case, 69 S. W. 2d 33, the employee, who worked by the day as a driller's helper, was "laid off" when the well in Texas was completed on October 3, 1928. He received no wages between that day and October 12, 1928, when his employer, having contracted to drill a well in Louisiana, gave him one day's work cleaning up around the rig and boxing the tools preparatory to shipping the rig and tools to the well site in Louisiana. At the same time he was employed by the company to go to Louisiana to work on the well to be drilled there. He reported for work on the Louisiana well on October 19 or 20, but his wages were paid for the time he was traveling from his home in Texas to the site of the well in Louisiana. The one day's work of preparing the rig and tools for shipment to Louisiana is, we think, properly considered a part of Volek's out-of-state employment, and if it is so considered, there was a break of about nine days, during which he received no compensation, between his Texas work and his work in the out-of-state employment. He was given the benefit of Section 19.

In the same case it was vigorously contended that Volek's status as a Texas employee ended and that he became an employee under new contract made in Louisiana when, after working there for a time, he was injured and "laid off" for about ten days and then after recovery went back to work. The Court held that no new contract of employment was made within the meaning of the statute, but that there was merely a suspension of the old contract.

In Standard Accident Ins. Co. v. Skidmore, 222 S. W. 2d 344, and in Aetna Casualty & Surety Co. v. Dixon, 145 S. W. 2d 620, it was held that a day to day worker maintained his status as a Texas employee, under his original employment to work in Texas, until his injury in another state, although there were periods of time during which he did not work and received no pay. In each of those cases application for writ of error was refused. In Associated Indemnity Corp. v. Scott, U.S.C.C.A., 5th Cir., 103 Fed. 2d 203, 208, the court expressed the opinion that a decision that required complete continuity between the work in Texas and the work in the foreign state would practi-

cally deprive the statute of extraterritorial effect as to day to day employees, like oil field workers are.

In the case before us the Court of Civil Appeals, after examining the testimony, expressed the conclusion that petitioner's employment terminated at the time he was "bumped" in April, 1949, and that he did not thereafter have the status of a company employee "laid off" for a time; and that Court reversed and rendered the trial court's judgment, thus holding that there is no evidence to support the finding of the jury that petitioner occupied the status of a Texas employee within the meaning of Section 19 of Article 8306. In so holding the Court of Civil Appeals pointed out that petitioner's contract of hire during the time the work was being performed near Whiteface and Levelland was a hiring from day to day and was terminable at the will either of the employer or of the employee and with or without cause or notice.

Our examination of the authorities above discussed and our study of the record lead us to the conclusion that the decision of the Court of Civil Appeals places too narrow a construction on the statute, and to the further conclusion that there is evidence which sustains the jury's finding.

It is true that petitioner made no case if Section 19 of Article 8306 intends to afford protection only to an employee who at the time he is directed or hired to perform work in a foreign state has or is under an existing and enforceable contract of employment in Texas. There is nothing in the brief terms of the statute indicating such an intention. Such a construction of the statute would be quite inconsistent with the several decisions which have been discussed. This is true of the Cason case, 132 Texas 393, 124 S. W. 2d 321, the McLaughlin case, 134 Texas 613, 135 S. W. 2d 955, and the Scott case, 103 Fed. 2d 203. A day to day worker, as the evidence shows petitioner was, has no enforceable contract except that he is entitled to be paid for each day that he works. According to the undisputed evidence oil field workers like petitioner do not have continuous employment. When a well is completed they are "laid off" and their pay stops. Between jobs they draw no pay. "Lay offs" are customary in the oil fields. Under the strict construction given to the statute by the Court of Civil Appeals a day to day oil field worker like petitioner could not be entitled to the benefits of the extraterritorial provision of the statute unless at the time when he was directed or hired to go into the other state to work he was actually engaged in working under

his Texas employment. There could not be even the shortest interval.

■ As has been said above, the decisions of this Court have not undertaken to define "status of a Texas employee". They have held consistenly that the claimant of compensation under Section 19 of Article 8306 must have or occupy that status at the time he is sent or directed to go to the other state to work there, and the Court has decided in each case as it has arisen and under its peculiar facts whether the claimant did or did not have that status. The result of the decisions is the denial of a narrow construction of the statute as meaning that one to occupy the status of a Texas employee within the meaning of the extra-territorial provision must have at the very time he is instructed to go to the other state an enforceable contract of employment in Texas, or that he must be at the very time under the direction and control of the employer. The words used in the decisions are "status of a Texas employee" and in the same connection the decisions declare that the primary purpose of the extraterritorial provision is to protect "our own workmen" and not those who are workmen of other states. From the language of the statute and from the decisions discussed, we are led to the conclusion that the phrase "status of a Texas employee" is not used in a narrow or technical sense, but rather is intended to include those who have the status of Texas employees or workmen in the ordinary sense of the words.

■ There must be no severance of the employer-employee relationship. When that relationship has been severed the workman no longer has the status of a Texas employee, and if he is thereafter employed by the same employer to go to another state to work, the employment is a new employment and he is not entitled to the benefit of Section 19. The rule of the Gallagher case, 135 Texas 41, 136 S. W. 2d 590, would apply. There will be difficulty in determining by what or under what circumstances the employer-employee relationship is broken. Certainly it is broken when the employer discharges the employee for cause, or in the event of the discharge of the employee when he has no contract of employment for a definite time. The relationship is broken when the workman leaves the employment with no intention to return to work. The relationship should not be regarded as severed when one working from day to day is merely "laid off" temporarily and both the employer and the workman expect and intend that the workman will within a reasonable time, or within not too long a time, resume his work for the employer. It is not giving the statute or the phrase

"status of a Texas employee' too liberal a construction to say that one thus temporarily "laid off" may be regarded as having the status of a Texas employee. The difficulty and the uncertainty lie in determining when, in the event of such a temporary "lay off", the period of time intervening between the cessation of actual work in Texas and the direction or hiring to go to work in another state becomes so long or so unreasonable in its duration as to justify or require the conclusion that the employer-employee relationship has been severed. An answer to this question cannot be found in the statute and the phrase "status of a Texas employee", because of its indefiniteness when given its ordinary meaning, does not answer it. Certainly in the law applicable to a question like this is most desirable, but the Court cannot, without engaging in legislation, say that the period of time should be or is in all cases a week or a month or six months, or any period of a specified duration. The reasonableness or the unreasonableness of the period of time intervening is to be determined, therefore, according to the facts of the particular case.

As the case is presented to us, we give full credence to the testimony of petitioner with respect to his status as an employee. His testimony is to some extent supported, and not on any material point contradicted, by the testimony of the "tool pusher" Hubbard. Petitioner was and is a resident of Texas. He had worked as a "roughneck" on the well being drilled by his employer, Warren and Bradshaw Drilling Company, near Levelland and Whiteface, Texas, from April 1 to April 22, 1949, when he was "bumped", meaning that he was obliged to surrender his place to another employee of the drilling company, who had seniority over him. Petitioner was not discharged; he was temporarily "laid off". He did not voluntarily cease working. He was told by the "tool pusher" and by his driller that the "lay off" was temporary, that they "would have a rig start soon", that he was going to work for them, and to hold himself in readiness to go to work. This he did, remaining two or three weeks at Levelland, where he lived with his family, one child being in school there. Then because he had no money he went to Snyder to pick up a few temporary jobs, leaving word that he would return to resume his work in the Levelland neighborhood for Warren and Bradshaw Drilling Company whenever they had a rig ready on another location. He found odd jobs near Snyder and worked at them for a total of sixteen or seventeen days. About July 1, while petitioner was in Snyder, Acton, who had been petitioner's driller and who then was still working for Warren and Bradshaw Drilling Company near Levelland,

but as a "roughneck", directed or employed petitioner to go to work under him for Warren and Bradshaw Drilling Company on a well to be drilled near Eunice, New Mexico, telling him that the work there would be temporary and that they would return to work for the same employer in Texas. Petitioner reported for work at the well location near Eunice, New Mexico, on July 1, and was injured while working there on July 10.

About nine or ten weeks intervened between petitioner's "bumping" and his hiring to go to New Mexico. During that period petitioner was not being paid by Warren and Bradshaw Drilling Company, and he was under no binding contract to go back to work for them. But according to the testimony he was "laid off" temporarily, and as directed or requested was holding himself in readiness to go back to work for the drilling company on another well when called. The length of the period of time during which he was temporarily "laid off" and was holding himself in readiness to go back to work was not sufficient of itself to sever the employer-employee relationship or to deprive him of his status as a Texas employee. Nor did his acceptance, while thus "laid off", of brief temporary work for others, in order to earn money for living expenses, work that result. In our opinion the evidence which has been set out above supports the jury's finding that petitioner occupied the status of a Texas employee. In view of the length of the period that intervened between petitioner's cessation of work on the well near Levelland and his hiring to go to New Mexico to work, a different question would be presented, had there been no representation to him that he would be given work on a well to be begun soon and that he should hold himself in readiness for that work.

■ Points in respondents' brief in the Court of Civil Appeals make not only the contention that there is no evidence to support the jury's finding that petitioner had the statute of a Texas employee, but also the contention that the evidence is insufficient to support that finding. On the trial in district court this principal question was one of fact since the answer depended upon the testimony of petitioner, and the assignment of insufficiency presents a question of fact within the jurisdiction of the Court of Civil Appeals and not within the jurisdiction of this Court. It has many times been said that a finding by the Court of Civil Appeals of no evidence includes the lesser finding that the evidence is insufficient. In the instant case, however, it is apparent from the opinion of the Court of Civil Appeals that it did not intend to pass upon the sufficiency of the evidence, but rendered its judgment because of its opinion

as to the law of the case, different from that expressed herein, on the controlling question. This being true, it is deemed advisable to remand the cause to the Court of Civil Appeals in order that it may make disposition of the question of sufficiency and of other points presented in respondent's brief in that Court.

The judgment of the Court of Civil Appeals is reversed and the case is remanded to that court.

Opinion delivered May 9, 1951.

Rehearing overruled June 6, 1951.