## Southern Underwriters v. Joe J. Gallagher.

No. 7440.  Decided February 14, 1940.
Rehearing overruled May 15, 1940.
(136 S. W., 2d Series, 590.)

*Battaile, Burr & Holliday,* of Houston, for plaintiff in error, Southern Underwriters.

The extraterritorial provision of the Texas Workmen's Compensation statute applies only to Texas employees, temporarily outside of the State upon missions of their employers, and has no application to employees primarily and expressed hired to do work in another state. Texas Emp. Ins. Assn. v. Hoehn, 72 S. W. (2d) 341; Texas Emp. Ins. v. Moore, 56 S. W. (2d) 652; Texas Emp. Ins. Assn. v. Price, 300 S. W. 667; Texas Emp. Ins. Assn. v. Volek, 69 S. W. (2d) 33.

*Scarborough & Fly,* of Abilene, for defendant in error.

MR. JUDGE CRITZ delivered the opinion of the Court.

This is a workman's compensation suit. It is founded on Section 19 of Article 8306, R. C. S. 1925, as amended. Such statute is generally referred to as the extraterritorial provision of our Workmen's Compensation Statutes.

Gallagher was injured about March 10, 1936, in the State of New Mexico, while in the course of his employment as an employee of Liberty Oil & Drilling Company, Inc. Southern Underwriters was the employer's Texas compensation insurance carrier at the time Gallagher was injured. Gallagher contends that, at the time of his injury, he was a Texas employee of the above-named employer within the meaning of the above-mentioned statute. Southern Underwriters contends to the contrary. Simply stated, Southern Underwriters contends that the evidence in this record shows indisputably that, at the time Gallagher was injured, he did not occupy the status of a Texas employee of Liberty Oil & Drilling Company, Inc., within the meaning of the above-mentioned statute.

The case was tried in the district court with the aid of a jury. Based on the answers of the jury to certain special issues submitted to them, the trial court entered judgment for Gallagher, and against Southern Underwriters. Southern Underwriters appealed to the Court of Civil Appeals at Eastland. On final hearing in the Court of Civil Appeals that court reversed the judgment of the trial court, and remanded the case for a new trial. 116 S. W. (2d) 450. The opinion of the majority of the Court of Civil Appeals is by Associate Justice Grissom, concurred in by Chief Justice Leslie. Associate Justice Funderburk dissented in part. Both parties applied to this Court for writs of error, and both writs were granted.

The dissenting opinion holds that the evidence in this record shows indisputably that Gallagher, at the time he was injured, did not occupy the status of a Texas employee of Liberty Oil & Drilling Company, Inc. We agree with such holding, but we are not in accord with all the reasons given therefor.

We will first dispose of the application for writ of error filed by Southern Underwriters. Southern Underwriters contends that the Court of Civil Appeals should have rendered judgment in its favor after reversing the judgment of the trial court, because the evidence in this record shows indisputably that at the time Gallagher was injured he did not occupy the status of a Texas employee of Liberty Oil & Drilling Company, Inc., sent incidentally or temporarily out of the State of Texas to perform labor or services. In this connection, it is shown that Gallagher was injured while working for the company just named in the State of New Mexico.

The statute, Section 19 of Article 8306, supra, involved in this case, so far as pertinent here, reads as follows:

"Sec. 19. (Section 1) If an employee, who has been hired in this State, sustain injury in the course of his employment he shall be entitled to compensation according to the Law of this State, even though such injury was received outside of the State, and that such employee, though injured out of the State of Texas, shall be entitled to the same rights and remedies as if injured within the State of Texas, except that in such case of injury outside of Texas, the suit of either the injured employee or his beneficiaries, or of the Association, to set aside an award of the Industrial Accident Board of Texas, or to enforce it, as mentioned in Article 8307, Section 5-5a, shall be brought either * * *

* * * * * * *

"Providing that such injury shall have occurred within one

year from the date such injured employee leaves this State; and provided, further, that no recovery can be had by the injured employee hereunder in the event he has elected to pursue his remedy and recovers in the state where such injury occurred."

In the case of Texas Employers' Insurance Assn. v. Volek (Tex. Com. App.), 69 S. W. (2d) 33, Section A of the Commission construed the above statute, and held:

"A careful reading of the above statute shows that it has effect to extend the provisions of our Workmen's Compensation Law to any employee 'who has been hired in this State,' even 'though injured out of the State of Texas,' if such injury be received within one year from the date he leaves the state. It will be noted that the statute only purports to cover 'an employee who has been hired in this State.' This clause certainly does not have reference to the place where the hiring was originally made. The primary purpose of our Compensation Law is to protect our own workmen. The purpose of the extraterritorial provision is to protect, under our law, employees who are such in this state under some contract of hiring, and who are incidentally or temporarily sent out of this State to perform labor or services."

In the very recent case of Fidelity & Casualty Company of New York v. McLaughlin, 134 Texas 613, 135 S. W. (2d) 955, we expressly approved and reaffirmed the holding in the Volek case, supra. We quote the following from the opinion in the McLaughlin case:

"We will adhere to the construction of the above-quoted statute as announced in the Volek case, supra. Our compensation statutes were enacted primarily to protect Texas workmen and employees. The extraterritorial provisions thereof were enacted to protect Texas workmen or employees,—that is, workmen or employees who occupy such status in Texas under some contract of hiring, who are incidentally or temporarily sent out of this State by their employers to perform labor or services."

■■ Under the plain provisions of Section 19 of Article 8306, supra, as interpreted and construed in the two cases above mentioned, before an employee injured outside the territorial limits of this State can recover for such injury under our Compensation Statutes, he must prove that, at the time of such injury, he occupied the status of a Texas employee incidentally or temporarily sent out of the State to perform labor or services.

The phrase, "who has been hired in this State," has no reference to the place where the contract of hiring took place. The test is: What was the status of the employee at the time of injury with regard to being a Texas employee? If, at such time, he occupied the status of a Texas employee, he is entitled to protection under our Compensation Statutes, even though he was working out of the State. On the other hand, if the employee is hired or contracted with in this State to go out of this State to perform labor or services, he cannot claim protection under our Compensation Law merely because the contract was made or entered into in this State. Also, if a person is hired to work in this State,—that is, if, under the contract of hiring, such person becomes a Texas employee in the sense that it is contemplated that his services are to be rendered in this State, such employee is protected by our Compensation Law, even thought he is first sent incidentally or temporarily out of the State to perform labor or services, and the mere fact that such employee performs his first services out of this State will not defeat his right to protection under our Compensation Statutes. In any event, before the statute under consideration can be applied in favor of an employee injured out of this State, it must be shown that he occupied the status of a Texas employee before leaving the State. Also, it must be further shown that while occupying such status he was incidentally or temporarily sent out of the State by the Texas employer to perform labor or services for such employer.

We come now to test the right of Gallagher to claim the protection of our Compensation Statutes under the above rules of law.

It is undisputed that Gallagher was injured in the course of his employment as an employee of Liberty Oil & Drilling Company, Inc., hereinafter called the Drilling Company; that such injury occurred less than a year from the date that Gallagher left the State of Texas; and that Southern Underwriters was, at the time of injury, the Texas compensation insurance carrier for the Drilling Company, and liable to pay compensation to Gallagher if he was, at the time of injury, protected as a Texas employee under the Texas Compensation Law. The one question to decide under the application for the writ of error filed by Southern Underwriters is whether the evidence in this record shows, as a matter of law, that, at the time of his injury, Gallagher did not occupy the status of a Texas employee of the Drilling Company. Southern Underwriters contends that the record so shows. The majority opinion of the Court of Civil

Appeals holds that, as presented by the record, the matter under discussion presented a fact issue for the jury to make a finding on. Such opinion contains a full statement of all evidence bearing on the question. Such evidence is contained in the testimony of Gallagher himself, quoted in "Q. & A." in the opinion. We refer to such opinion for a full statement of such evidence. In order, however, that this opinion be complete within itself, we make the following statement:

Gallagher was sworn as a witness in his own behalf, and on the question under discussion testified, in substance, as follows: That he first talked to the officers or agents of the Drilling Company at Kermit, in Winkler County, Texas; that Kermit is about twelve miles from the New Mexico line; that at the time he first talked to the above-mentioned officers they were going to drill a well in Texas near Pecos; that he spoke to such officers about going over there on the Pecos job, and they said when they got ready to start that job they would send him (Gallagher) over there; that he did not go to work on the well near Pecos in Texas, and never did any work for the Drilling Company in Texas; that the well was started in New Mexico, and he was told by the officials of the Drilling Company to go over there, and when the Drilling Company got ready to rig up, he (Gallagher) would be transferred back to Texas; that the officers of the Drilling Company told him (Gallagher) that he would be sent to the deep test in Pecos County, Texas, which well was another job; that he (Gallagher) said he would rather work in Texas than in New Mexico for the reason he lived in Texas with his family; that the officers of the Drilling Company told him (Gallagher) to go over there (we presume meaning New Mexico), we carry Texas compensation insurance, and that he (Gallagher) then took the job and went to work on the well in New Mexico; that he (Gallagher) did not go to work in Texas; and that he was injured before the Texas job got started.

Gallagher further testified: That he started to work for the Drilling Company on the well at Jal, New Mexico; that he began working on March 1, 1936; that he talked to the officer of the Drilling Company the day before he started to work; that such conversation took place at Kermit, Texas; that on that occasion it was agreed his wages would be $8.00 per day; that this conversation took place on the last day of February; that he (Gallagher) was told to report for work at Jal, New Mexico, the next morning; and that he did report for work at such place at the time directed.

Gallagher further testified: That during the time he worked for the Drilling Company at Jal, New Mexico, he lived, or stayed, at Kermit, Texas; that he would spend the night at Kermit; that he was injured on March 10, 1936, at Jal, New Mexico; that at the times here involved the Drilling Company had tools and drilling rigs running in Texas; and that the work the Drilling Company was doing at Jal, New Mexico, was similar to work the company was then doing in Texas.

Gallagher further testified: That he first talked to the officer of the Drilling Company at the home of such officer at Kermit, Texas; that at such time such officer said he would employ him at the first opening the Drilling Company had; that such officer told him (Gallagher) he had a job for him; that he should report for duty the next morning at Jal, New Mexico; that such officer then said the Drilling Company was figuring on starting a deep test in Pecos County, Texas, and would transfer him (Gallagher) to that job when the work started; that such officer then said that they only wanted him (Gallagher) to stay in New Mexico until they started the test in Pecos County, and would then transfer him (Gallagher) back there; that he (Gallagher) told such officer it was a long drive from Kermit, Texas, to the work at Jal, New Mexico, and that he (Gallagher) was living at Kermit; that the Drilling Company officer then told him (Gallagher) to go to the New Mexico job the next morning; that at such time they talked about other jobs; that he (Gallagher) then said he would go to the job in New Mexico; that the officer of the Drilling Company then said that as soon as the well in Pecos County was started, they would transfer him (Gallagher) to that job; that he (Gallagher) told such officer of the Drilling Company that he would appreciate being transferred to the Pecos job because he wanted to work in Texas.

Gallagher further testified: That he asked the officer of the Drilling Company if such company was covered with compensation insurance, and such officer stated his company had a Texas policy for its men working in New Mexico, and he (Gallagher) told such officer that was agreeable; that in connection with this talk about compensation insurance, the Drilling Company officer said that the company carried Texas compensation insurance on the men the company hired in Texas, and New Mexico compensation insurance on the men the company hired in New Mexico.

■ It is undisputed that Gallagher never did any character of work and never performed any character of services for the

Drilling Company in Texas prior to the time he went to work for such company in New Mexico. He therefore cannot be said to have been a Texas employee of the Drilling Company, simply laid off for a time, on the occasion when he was sent out of the State to work at Jal, New Mexico. It follows that he cannot be classed as a Texas employee under facts similar to those involved in the Volek case, supra. As shown above, the contract under which Gallagher performed labor in New Mexico was made in Texas, but the place where the contract was made and entered into is not the determining factor in deciding a case like this. Texas Employers' Insurance Assn. v. Volek, supra.

■ From what has been said above, it is evident that if it can be said Gallagher occupied the status of a Texas employee of the Drilling Company temporarily or incidentally performing labor or services for such company in New Mexico at the time of his injury in such State, it must be upon the theory that his testimony will justify a fact finding that, at the time he (Gallagher) went to work in New Mexico, he and the Drilling Company had already entered into a contract by the terms of which he (Gallagher) became a Texas employee, in the sense that his services were to be performed in Texas, and thereafter he (Gallagher) was sent temporarily or incidentally to New Mexico to perform labor or services for the Drilling Company. We are unable to find any evidence in Gallagher's testimony that would justify such a conclusion. In fact, such evidence absolutely refutes the same. Gallagher's testimony is to the absolute legal effect that he and the Drilling Company simply made a contract in Texas by the terms of which Gallagher was to go to New Mexico and there perform labor or services for the Drilling Company. It is true that the employer told Gallagher that when a certain job was started in Texas, he would be transferred thereto, but such statement did not constitute him a Texas employee under any of the rules above announced. At most, it was a mere promise to make him a Texas employee at some time in the future.

■■ Gallagher seems to lay great stress on what was said about the New Mexico employees of the Drilling Company being covered by compensation insurance under the Texas law. In the first place, the matter as to what employees working in New Mexico were covered by the Texas Compensation Law must be governed by the law. The Drilling Company could not extend the law to New Mexico by simply telling the employee that it had done so. The legal status of the employee determines the matter. If the employee is protected, it is by reason of the

fact that at the time of injury he occupies the status of a Texas employee, temporarily or incidentally sent out of the State by his employer to perform labor or services. Finally, when we carefully examine the testimony as to what was said about the employees of the Drilling Company who were working in New Mexico being covered by compensation insurance under Texas laws, it is clear that the officer of the Drilling Company merely expressed the erroneous opinion of law that the employees working in New Mexico were protected under Texas compensation insurance, because the contracts under which said employees went to work were made in Texas.

We have given the question above discussed unusual consideration because of their importance to Texas workmen, employers, and compensation insurance carriers. We are fully aware of the rule that our Workmen's Compensation Law should be liberally construed in favor of Texas employees. In spite of this rule, we cannot bring ourselves to the conclusion that it is the intent or purpose of such law to extend its protection to an employee injured in a foreign state, where the undisputed facts show that such employee never, in any sense, occupied the status of a Texas employee prior to leaving the State.

Our rulings above make it unnecessary for us to discuss any of the questions of law raised by Gallagher's application for writ of error.

It appears from this record that the facts regarding Gallagher's status as an employee of the Drilling Company have been fully developed. Therefore, no purpose can be served by a remand of this cause for a new trial.

The judgments of the Court of Civil Appeals and the district court are both reversed, and judgment here rendered for Southern Underwriters.

Opinion delivered February 14, 1940.

Rehearing overruled May 15, 1940.