## TEXAS EMPLOYERS' INS. ASS'N v. MOORE et al.

### No. 3740.

Court of Civil Appeals of Texas. Beaumont.

Nov. 20, 1940.

Rehearing Denied Dec. 4, 1940.

E. B. Pickett, Jr., of Liberty, and Sewell, Taylor, Morris & Connally and J. Toll Underwood, all of Houston, for appellant.

Bill Daniel, Price Daniel, and Thomas A. Wheat, all of Liberty, for appellees.

WALKER, Chief Justice.

This is a workman's compensation case, filed in the district court of Liberty county by appellees, Mrs. Loula Moore, a widow, the mother of Herbert B. Moore, deceased, and her sons against appellant, Texas Employers' Insurance Association, as the compensation insurance carrier of the Greta Oil Company, for compensation for the death of Herbert B. Moore, who was killed in an automobile accident in the state of Louisiana on the 7th day of September, 1937. Appellant's defense was that, at the time of Moore's death, he was an employee of the Cavalier Oil Company, and was insured under the Workmen's Compensation Act of Louisiana by Associated Indemnity Company, the compensation insurance carrier of Cavalier Oil Company; and if the deceased was an employee of Greta Oil Company, whose compensation appellant carried, he was not a "Texas employee," employed "temporarily or incidentally" for performing services in Louisiana, within the meaning of the extraterritorial provisions of the Texas Workmen's Compensation Act.

The jury found the following facts:

(1) Moore was hired as an employee of Greta Oil Company on May 15, 1937.

(2) His contract of employment contemplated a temporary stay in Louisiana.

(3) Moore was an employee of Greta Oil Company under his contract of hire, on the date of his injury and death.

(4) Moore's injuries and death were sustained by him while in the course of his employment with Greta Oil Company.

(5) The vice-president and manager of Greta Oil Company, immediately following the injury, assured plaintiffs that he would file the necessary claim for compensation insurance for them.

(6) Moore was not in the personal service of George L. Noble, Jr., on the date of his injury.

(7) Moore was not employed under a contract of hire by the Cavalier Oil Company.

(8) Moore was not in the service of Cavalier Oil Company on the date of his injury.

(9) Moore was not an employee of Cavalier Oil Company at the time he was killed, and was not injured in the course of his employment with that company.

(10) Appellees had good cause for their failure to file their claim for compensation within six months.

On the verdict, judgment was rendered in favor of appellees for compensation for 360 weeks at $20 per week, with interests and costs, from which appellant duly prosecuted its appeal to this court.

Appellant's first point is that, on the undisputed evidence, Moore was not an employee of Greta Oil Company but was an employee of Cavalier Oil Company, and was killed in the course of his employment with that company.

From appellees' standpoint, the evidence on this issue may be summarized as follows: The Greta Oil Company and the Chapman Minerals Company are Texas Corporations, domiciled in the city of Houston in adjacent offices, and all the stock of both companies was owned by members of the O. R. Seagraves family. The Cavalier Oil Company is a Delaware Corporation, domiciled in Louisiana, without a permit to do business in Texas. George L. Noble, Jr., was vice-president and general manager of the Greta Oil Company and, though he owned one-third of the stock of the Cavalier Oil Company and was one of its directors, he had no authority to act as agent for that company in any respect or in any capacity.

On the 11th day of May, 1936, the Cavalier Oil Company owned in Louisiana a "wild cat" acreage of about 7,000 acres, but had no funds and no rig to develop it for oil. On that date it made a contract with Chapman Minerals Company to finance the drilling of a well on its acreage in Louisiana, on the consideration of "an undivided 80% interest in all of the leases comprising said block including the tract upon which said well is to be drilled." Neither Chapman Minerals Company nor the Cavalier Oil Company owned a drilling rig, but the Greta Oil Company owned a rig, and the Chapman Minerals Company contracted with the Greta Oil Company for its rig and for it to superintend the drilling of the well. This contract is not in the record, but Mr. Noble, vice-president and general manager of Greta Oil Company, testified as to its nature and contents:

"Mr. Morris: Q. Then after you got that financed you, acting for the Cavalier Oil Company, borrowed or rented the rig from the Greta Oil Company with the assurance that you would return it in good shape? A. No, that is not exactly correct.

"Q. How was it? A. The Chapman Minerals Corporation arranged with the Greta Oil Company for the use of the rig, and Chapman Minerals Corporation gave the Greta Oil Company 1500 acres of what it acquired from the Cavalier Oil Company.

"Q. Then the Cavalier never did give any acreage to the Greta Oil Company? A. No, the Cavalier Oil Company gave all of the acreage to Chapman Mineral Corporation and they assigned 1500 acres to the Greta Oil Company. * * *

"Q. And the Cavalier rented a rig from the Greta Oil Corporation to drill this well? A. Chapman Minerals did.

"Q. Chapman Minerals did from the Greta Oil Corporation? A. Gave them fifteen hundred (1500) acres for the use of that rig. * * *

"Q. Didn't you say the Cavalier Oil Company gave up 80% to Mr. Seagraves to drill the well? A. That is right—he owned the Chapman Minerals Corporation.

"Q. And Chapman Minerals Corporation made a contract with the Greta Oil Company to furnish the rig and supervise the drilling of the well? A. That is right.

"Q. Therefore the contract was never between the Greta Oil Company and the Cavalier Oil Company to drill the well, is that right? A. Yes.

"Q. Had they turned it over to Chapman Minerals Corporation or to Mr. Seagraves before they made a deal with the Greta Oil Company? A. It was all signed up at the same time.

"Q. Therefore, there was no deal direct between the Cavalier Oil Company and the Greta Oil Company, is that correct? A. Yes. Wait a minute, Greta insisted on me being over there."

On the issue of Herbert B. Moore's employment, Mr. Noble testified (Q. and A. reduced to narrative):

"Herbert B. Moore called me and asked me for this job and I gave it to him. I employed him to supervise this well. He came to my office in Houston and I employed him about May 15, 1937. I talked to him over the phone out at Hull and I told him I could give him a job; he came in Monday and I sent him over to Louisiana. He came in a few days before Monday, Saturday morning I think. At the time I talked to him I was in the office of Greta Oil Company, or at my home. When he came to see me, he came to the office of Greta Oil Company. It was in the office of Greta Oil Company that I talked to him about his employment and made the definite employment. Mr. Moore had worked for me before that time; I met him in 1922. He was an oil field worker and I was acquainted with his ability and the kind of work he did. He was skilled along the lines of oil field work; he was a good man and worked for the same company I had worked for—the Houston Production Company. I am sure he had been working at least a year before this accident in the same kind of work I gave him but I hadn't seen him for a couple of years prior to that. I agreed to pay him $275.00 per month. The first thing that had to be done by Mr. Moore under his employment with me was to set the rig up properly and correctly; he spent several days setting the rig up. Wait just a minute, I hadn't assembled the crew; that was the first thing Mr. Moore had to do—to get a crew. I told him to get some of his friends on the rig—that is customary. If I remember correctly Mr. Moore went back to Hull and got the men there in one day. He assembled part of his crew in Texas, but he had a bunch of Louisiana boys that he hired over there. Mr. Moore performed some service under his contract with me over here in Texas in getting the crew together before he went to Louisiana. I told Mr. Moore, while he was in charge of the hole, that I wanted him to be careful. He was to report to me and let me know how he was getting along; I would let him know when to pour; I wanted to know if everything was going all right; he was hired to take good care of the rig —that was what he was hired for. His employment began on the 15th of March, 1937, in the office of the Greta Oil Company. * * * I turned over the super-vision of that well and the care of the rig to Mr. Herbert Moore; he was working under my supervision. * * * In employing Mr. Moore I was acting as vice-president and general manager of Greta Oil Company and I employed him to supervise the drilling of the well, in execution of the Greta Oil Company's contract with Chapman Minerals Company.

"'Q. I will ask you to state whether or not all your work and supervision of the well and caring for the rig was through your official capacity as vice-president and general manager of the Greta Oil Company? A. That is correct.'"

Mr. Arthur P. Portas, president of Cavalier Oil Company, testified: "There was no contract between the Greta Oil Company and the Cavalier Oil Company. The Chapman Minerals Company, as a result of our contract with Mr. Seagraves, took over and financed the well. The Cavalier Oil Company did not put up any money for the drilling of the well, nor did it furnish any rig or any equipment for the drilling of the well. Everything was handled through Chapman Minerals Company. We had no arrangement of any kind with Greta Oil Company. Mr. Herbert Moore's duties did not require him to do scouting for Cavalier Oil Company. The Cavalier Oil Company was not interested in scouting work of other wild cat propositions in Texas."

■ This evidence clearly raised the issue that Herbert B. Moore was employed by the Greta Oil Company to supervise the drilling of the well on the wild cat holdings of Cavalier Oil Company and that he was under the direction and control of Greta Oil Company, and in no way subject to the control of Cavalier Oil Company. It requires the citation of no authorities to support the verdict of the jury on these issues.

On the issue whether Herbert B. Moore was killed in the course of his employment with Greta Oil Company: The undisputed evidence is that Herbert B. Moore was killed in an automobile accident while "scouting" another wild cat oil proposition, and not while supervising the drilling of the well; he was scouting for another job for the rig owned by Greta Oil Company. Had he found the job, it would have been submitted to Mr. Noble as vice-president and general manager of Greta Oil Company. Mr. Moore was actually on his way

to Kentwood, Louisiana, on this scouting trip. Mr. Noble testified:

"While Herbert Moore was in Louisiana I authorized him to make a scouting trip or two. The general business of Greta Oil Company consisted of drilling wells for others. It was my duty as vice-president and general manager of Greta Oil Company to look for other wells. We were looking for other wells; in the oil business you are always looking for business. In going to Kentwood to inspect this drilling proposition for drilling a well near Kentwood, Herbert Moore was travelling within the line and scope of the employment for which I employed him. On December 13, 1937, I made the following statement, which is correct:

" 'In addition to Mr. Moore's job as tool pusher on this particular well, he also made various scouting trips for me, and it is my information that at the time of his injuries on September 3, 1937, he was going to inspect a drilling proposition near Kentwood, Louisiana. This would be entirely within his line of duty.' He was working twenty four hours a day and was subject to call at any and all times. If Mr. Moore, on his way to Kentwood at the time he was killed, was scouting a proposition for the use of the rig—if he, was scouting Kentwood for the use of the rig—it would have to be for the Greta. * * * I am sure that he was doing this so as to bring it to my attention in hopes that if the proposition had merit, my corporation might take it over. He would consider this a scouting job and would have been entirely in his line of duty if he was on such a mission. In his scouting work, Mr. Moore was exclusively under my supervision. All of my work in drilling the well in Louisiana and in this scouting was through my capacity as vice-president and general manager of the Greta Oil Company."

After Herbert B. Moore's death, the holdings of the Greta Oil Company were purchased by the Barnsdall Oil Company, which assumed all the debts and salary accounts due by the Greta Oil Company to its employees. The list of unpaid salaries due by Greta Oil Company included the unpaid salary account of Herbert B. Moore, and after his death his final salary check was paid by Barnsdall Oil Company, under its contract of purchase with the Greta Oil Company.

This evidence fully supports the verdict of the jury that Herbert B. Moore was killed while in the course of his employment with Greta Oil Company, and while in the discharge of the duties of his employment.

The jury found that the "contract of employment of Herbert B. Moore contemplated a temporary stay by Herbert B. Moore in the State of Louisiana." The evidence supports this finding. Herbert B. Moore's contract of employment was general, with no limitation as to time of employment. The contract was made in Texas, and the first duties of the employment were discharged by him in Texas. The Greta Oil Company had only one drilling proposition in Louisiana, but had other drilling propositions in Texas, down near Corpus Christi. He was employed because he was a skilled workman; because Mr. Noble knew him and had confidence in him; because the Greta Oil Company needed his services in developing its oil holdings. Moore lived in Texas, in Liberty county. He made his home with his mother; the evidence clearly raised the issue that in leaving his home to go to Louisiana, it was his intention to stay there only temporarily. We quote again from the testimony of Mr. Noble: "In 1937, the Greta Oil Company owned producing wells in the Greta fields in Refugio county, also in the Saxtet field in Nueces county, and in San Patricio county. The Greta Oil Company drilled several wells in the Greta field, several in the Saxtet field, and one in the Taft field in 1937. Since the Greta Oil Company was organized it has been engaged in the general production business in the State of Texas, and only in the State of Texas. The Greta had no operations in Louisiana, except this one well. * * * The work in Louisiana was just of a temporary nature."

We think the testimony raised the issue that Herbert B. Moore, at the time of his death, was a Texas employee within the meaning of Article 8306, Sec. 19, R.C.S., Vernon's Ann.Civ.St. art. 8306, § 19, as that section has been construed by our Supreme Court in Southern Underwriters v. Gallagher, Tex.Sup., 136 S.W.2d 590, and the authorities therein cited.

In support of its contention that Moore was not a Texas employee, appellant advances the following proposition: "Mr. Moore never on any occasion performed

any character of services whatsoever for the Greta Oil Company in Texas. * * * The appellees may perhaps argue that Moore did perform services in Texas before he left for Louisiana. It is not necessary to consider the question as to whether or not his calling of several of his friends and telling them that he had a job for them in Louisiana constituted the performing of services in Texas. It is only necessary to inquire for whom this calling was done. These men called by Mr. Moore were to work for the Cavalier Oil Company in Louisiana on the Cavalier well. Thus it can not be said that Moore prior to his departure from Texas performed any services for the Greta Oil Company."

The evidence does not support this contention. Mr. Noble, on his own testimony—at least the evidence raised that issue—employed Mr. Moore to work for the Greta Oil Company in drilling the well in Louisiana, and instructed him to employ other men as employees of the Greta Oil Company to assist on this job.

 Appellant insists that the verdict is without support because the court failed to submit to the jury "the indispensable issue as to whether or not Herbert Moore was a 'Texas employee' of the Greta." The court's charge submitted the essential elements of that issue, and was sufficient under the Pepper case, Wichita Falls & O. R. Co. v. Pepper, 134 Tex. 360, 135 S.W. 2d 79.

Appellant's fifth proposition is to the effect that, by the agreement between the Greta Oil Company and the Cavalier Oil Company, the Cavalier was bound to carry compensation insurance for all men employed on the well. This proposition is without support in the facts. There was no contract of any kind or character between Cavalier Oil Company and the Greta Oil Company; see the testimony of Mr. Portas, president of the Cavalier Oil Company, copied above.

The sixth proposition, to the effect that the court erred in its definition of the term "employee," is overruled. Appellant's objection was that the definition "was incomplete, erroneous and inadequate, in that the jury was not instructed that a person who voluntarily rendered services for another without remuneration was a mere volunteer and not an employee." This exception is without support in the evidence. The same exception to the court's definition of "injuries sustained in the course of employment" is overruled.

The court did not err in receiving in evidence the check given by Barnsdall Oil Company in payment of the deceased's last month's salary.

Appellees concede that the judgment is erroneous to the extent that the award in their favor of a lump sum was not discounted on the statutory basis of 6 per cent., and in awarding interest on the matured compensation, for the reason that this interest had no support in the pleadings.

It follows that the judgment of the lower court should be reformed by allowing appellant the proper discounts, and our clerk is directed to make this calculation and to deduct the discounts from the court's award in favor of appellees. As reformed the judgment should be in all things affirmed.

Reformed and affirmed.