TEXAS EMPLOYERS' INS. ASS'N v. HALE.

No. 6085.

Court of Civil Appeals of Texas. Amarillo.
Oct. 23, 1950.

Rehearing Denied·Dec. 4, 1950.

Crenshaw, Dupree & Milam, Lubbock, for appellant.

Ratliff, Conner & Walker, Spur, for appellee.

LUMPKIN, Justice.

The principal question to be determined on this appeal is whether the record shows, as a matter of law, that at the time of his injury the appellee, James Floyd Hale, occupied the status of a Texas employee of the Warren and Bradshaw Drilling Company. The appellee claims that although he was injured in New Mexico, he was, nevertheless, "an employee, who had been hired in this State." The suit was brought under the extra-territorial provisions of the Texas Workmen's Compensation Act, Article 8306, Section 19, Vernon's Annotated Civil Statutes.

The appellant, Texas Employers' Insurance Association, answered the appellee's claim by special exceptions, a general denial, and specially pleaded that appellee's remedies were under the Workmen's Compensation Act of New Mexico, 1941 Comp. § 57–901 et seq., and that therefore the appellee was not entitled to recover under the extra-territorial provisions of the Texas Act. Trial was to a jury. Based on the answers of the jury to special issues, the trial court entered judgment for the appellee. To this judgment the appellant excepted and has duly perfected its appeal.

The pertinent portions of Article 8306, Section 19, are as follows: "If an employee, who has been hired in this State, sustain injury in the course of his employment he shall be entitled to compensation according to the Law of this State even though such injury was received outside of the State, and that such employee, though injured out of the State of Texas, shall be entitled to the same rights and remedies as if injured within the State of Texas, * * *."

In construing this statute our courts have held that before an employee who is injured without the territorial limits of the state can recover under the Texas statute, he must prove that at the time of his injury he occupied the status of a Texas employee incidentally or temporarily sent out of the state to perform labor or services. Texas Employers' Ins. Ass'n v. Volek, Tex.Com.App., 69 S.W.2d

33; Fidelity & Casualty Co. of New York v. McLaughlin, 134 Tex. 613, 135 S.W.2d 955; Southern Underwriters v. Gallagher, 135 Tex. 41, 136 S.W.2d 590; Employers Mutual Liability Ins. Co. v. Evins, Tex. Civ.App., 211 S.W.2d 359, writ ref. Therefore, the question for us to determine is whether the appellee, at the time of his injury in the State of New Mexico, occupied the status of a Texas employee incidentally or temporarily sent out of the state to perform labor or services. In determining this issue we must consider the evidence in the light most favorable to the appellee. Fidelity & Casualty Co. v. McLaughlin, supra.

The appellee's employer, Warren and Bradshaw Drilling Company, maintains its principal office at Tulsa, Oklahoma. It is engaged in the business of drilling oil wells in a number of states including Texas and New Mexico. It owns a number of drilling rigs which are constantly being moved from one location to another. Some of the drilling company's employees are designated as division superintendents, toolpushers, drillers and roughnecks. The toolpushers hire the drillers and pay them only for the time they spend in actually working. The drillers hire and fire roughnecks on their particular crews. Roughnecking is not considered steady employment. The men are paid by the hour with time and a half for all overtime. The record shows that it is the custom in West Texas and New Mexico to have periods of lay-off which sometimes exists for several weeks depending upon the circumstances of the business, and it is likewise customary for the employer to notify the employees of any new locations which it may have in the future and to advise the employees of possible work on them. That is done to insure the drilling contractor of having experienced oil field workers available for work on the new location.

On April 1, 1949, the appellee, an oil field worker, was employed as a roughneck or motorman upon a well being drilled near Whiteface, Cochran County, Texas, by the Warren and Bradshaw Drilling Company. The actual hiring was done by a driller named John Henry Acton. Fif-

teen days later the Acton crew was "bumped" (or laid off) by a crew with greater seniority. All of the Acton crew lost their jobs except the driller Acton himself who went to work on the rig as a motorman, the job which had been held by the appellee. The appellee had the following conversation with Acton concerning the lay-off: "Yes, the toolpusher came out and gave us word, told us the news, and how it was, and said he was sorry but he had to keep his hands and drillers, that none of us were fired, we were laid off temporarily." The appellee said he talked with the toolpusher and asked him if he thought there would be a job at a new location. The appellee's testimony continues: "'* * * I have a child in school that I would like to keep in school, if you think this well will start back up, get another location, I would like to stay, but if there is any doubt in your mind I would like to make a change, I don't have much money.' He said, 'As far as I know and I am pretty sure I can assure you we will start back up in the neighborhood of two or three weeks.' I said, 'I can go back to work in my same job?' and he said, 'You sure can, we will be glad for you to stay with us.' "

The appellee said he understood that the new location would be near Levelland, Hockley County, Texas, and that he would work on the same rig he had been working on. Levelland and Whiteface are within a few miles of each other. The appellee waited around Levelland for a couple of weeks and then, finding he was running short of money, talked to Mr. Acton. The appellee's testimony continues: "The driller said that he would start back up in a few days he was pretty sure, but if I had any other intentions in mind to speak up and I said, 'If you want me to go ahead and stay with you that is what I want to do.' He said, 'That is exactly what I wanted you to say, I want to keep you.' I said that I didn't have any money and that I would like to go to Snyder and pick up a few temporary jobs until the rig gets ready on another location, and I said, 'I will leave my address and you let me know and I will be back to work the minute you

let me know.' That was all agreed and I went to Snyder."

About May 1, 1949, the appellee went to Snyder, Texas, and while there he worked for three different employers: The Davidson Drilling Company, 2 days; Morrison Construction Company, 6 or 7 days; and Rogers Construction Company, 6 or 7 days. He did not ask permission from either the driller Acton or the toolpusher Hubbard to go to work for any of these concerns. It seems that the appellee was unemployed after May 16th. About this time he was paid a visit by Mr. John Henry Acton. The appellee testified:

"* * * John Henry Acton came down and wanted me to go back to work for him. He and his wife came down and we discussed it. I asked the location and he said a wildcat at Guthrie [King County], Texas. I said, 'That is fine, I would like to go over there.' He said, after so long a time, 'We will start back, maybe we won't be out of work now for a long time.' I agreed to go to Guthrie with him. He and his wife stayed a while and went back home.

"Q. Did you know where he was working at that time? A. Around Levelland. He was waiting for Warren & Bradshaw to get another location to start back up. They had finished the well I was working on when I left. I didn't hear from him for a few days and he came back in three, four or five days afterwards and said he had news for me, and I said, 'What kind of news?' He said, 'We have been transferred—I have—to Eunice, New Mexico,' and wanted to know if I would go there with him. He said 'If you go with me I assure you it will be a short job. We have three shallow wells which will take six or seven weeks if we don't have any trouble, and then * * * we would go back near or around in the community of Levelland and would continue having work up there.' "

The appellee stated that Acton employed him to work on a well near Whiteface or Levelland, Texas, and that the work at Eunice, New Mexico, was only temporary. Soon after this conversation the appellee moved his family to Eunice, New Mexico.

On July 9, 1949, he went to work for the drilling company as a motorman under the same terms of employment as he had while working near Whiteface. The only members of the old crew who were on the well at Eunice were the driller, John Henry Acton, and the appellee. All the other members of the crew were new employees who filled out slips telling their ages and other information pertaining to their employment. The driller and the appellee did not sign such slips because they had furnished this information at the time they were employed on the rig near Whiteface.

On July 10, 1949, while acting in the course of his employment with the drilling contractors at Eunice, New Mexico, the appellee received the injuries for which he now seeks compensation under the Texas Act.

Did the relationship of employer and employee exist between the drilling company and the appellee after the Acton crew was "bumped" from the Whiteface rig? In our opinion it did not. Appellee's employment was terminated on April 15, 1949, and he did not thereafter have the status of a company employee laid off for a time. The contract of hire during the time the work was being performed near Whiteface was a hiring from day to day and was terminable at the will of either the employer or the employee with or without cause or notice. St. Louis Southwestern Ry. Co. of Texas v. Griffin, 106 Tex. 477, 171 S.W. 703, L.R.A.1917B, 1108; Consolidated Indemnity Ins. Co. v. Smith, Tex. Civ.App., 74 S.W.2d 139; Farley v. Universal Mills, Tex.Civ.App., 116 S.W.2d 488.

The record shows that at the time the appellee was "bumped" from the rig near Whiteface, he was paid by draft signed by Glenn Hubbard, toolpusher for the Warren and Bradshaw Drilling Company. The employees of the drilling company were ordinarily paid by payroll checks issued from the Tulsa office but on the termination of an employee's work he was paid by draft signed by the toolpusher, if the employee wanted his money. In this case the appellee was paid by draft.

After the crew was "bumped" there was a discussion between the driller Acton and the appellee regarding future work with the drilling company. The appellee's child was in school and for that reason he wished to stay in the vicinity of Whiteface or Levelland. According to Glenn Hubbard, the toolpusher for the drilling company in that district, the company was contemplating the drilling of Beasley No. 2, located near Levelland. At the time this crew was "bumped" Acton had the information concerning Beasley No. 2. Within two weeks this location was cancelled. About two months later a well was drilled on this location, but the appellee was not employed to work on it. Later—at Snyder—there was a discussion between Acton and the appellee about going to work on a well near Guthrie, Texas. This employment never materialized.

In our opinion the most that can be said for the statements made by the driller Acton to the appellee at the time the crew was "bumped" is that if another well was started in the Whiteface neighborhood and if Acton secured employment as a driller on that rig then the appellee, if he were available, could return to his old job as motorman. The most that can be said for the toolpusher's statement is that he expressed a desire for the appellee's services should the company have work within a few weeks. The appellee said he considered himself under no obligation to return to work for the drilling company. He could have obtained other employment if he had desired. The record shows that Acton, himself, was not employed as a driller after the crew was "bumped" but was employed as a motorman. After the Whiteface well was finished he went to work for another drilling concern. According to the toolpusher, Acton was not authorized to have anyone stand by or stay on the payroll when not actually working —the drilling company did not allow such a practice. The toolpusher, Mr. Hubbard, testified as to the custom of laying off crews:

"A. They are laid off when the well is finished, or when an older crew comes along we take care of it, we call it bumping.

When you bump a crew or lay them off we generally paid them.

"Q. Did you ever have an agreement with any crew that was bumped at any time to keep them standing by for any length of time until another rig started up? A. No. If we think a well is coming up in a week or two we tell them we are figuring on this job, but we never tell a man to sit and wait because we don't know ourselves what is going to happen."

Hubbard testified that about two months after finishing the Whiteface well he was drilling a well near Aspermont, Texas. Acton came to him looking for a job. Hubbard was running three rigs at the time but he did not employ Acton. However, he did introduce him to the drilling company's toolpusher in New Mexico—a Mr. Smith. Smith employed Acton as a driller for the well to be drilled near Eunice, New Mexico.

In conclusion we point out that the appellee's own testimony shows that Acton did not send word for appellee to report for duty at any particular place but that he went to see him and asked appellee if he would go to work on the well at Guthrie, Texas, and, on the second visit Acton asked the appellee if he would go to work on the well at Eunice, New Mexico. The appellee positively testified that there was no obligation on his part to accept either of these offers of employment. The appellee's employment terminated on April 15, 1949, the date the Acton crew was "bumped" at the Whiteface well, and he was not employed again by the drilling company until he made the agreement with Acton to go to Eunice, New Mexico. Even if it could be assumed that appellee's employment was not terminated but that he was simply laid off for a time on the occasion of the Acton crew being "bumped," then it must be pointed out that the appellee's own testimony refutes the theory that he was a company employee from the time he was laid off until he went to New Mexico. He said the toolpusher told him he could go back to work within two or three weeks. The new location, known as Beasley No. 2, was to be near Levelland. It was several months before a well was drilled on this location by the company, and the appellee knew the company had no work for him near Levelland at the time he moved to Snyder. Furthermore, the record reveals that after the appellee was "bumped" from the Whiteface job, Acton did not have the authority of a driller to employ roughnecks until he was engaged by Mr. Smith to work at Eunice, New Mexico.

■ A study of the entire record clearly shows that the appellee was employed by Acton in this state to go to New Mexico to perform labor or services. Under the rule set forth by our Supreme Court in the case of Southern Underwriters v. Gallagher, supra, he cannot claim protection under the compensation laws of this state merely because the contract was made or entered into in Texas. The appellee maintains that he was employed by Acton to work on rigs near Levelland or Whiteface, Texas—that his employment at Eunice, New Mexico, was only temporary and incidental to his Texas employment. The appellee's testimony is to the effect that he and Acton made a contract at Snyder, Texas, by the terms of which he was to go to New Mexico and there perform labor or services for the drilling company. Covington v. Associated Employers Lloyds, Tex.Civ.App., 195 S.W.2d 209, writ refused. Acton did tell the appellee that the job in New Mexico would be of short duration, no more than six or seven weeks, and then he would return to the vicinity of Levelland and continue work there. Such a conversation, as a matter of law, did not make of the appellee a Texas employee. In the first place Acton was not authorized to employ roughnecks on any rig but his own; and secondly, if he had had the authority, Acton's statement was nothing more than a mere promise to make the appellee a Texas employee at some time in the future. Southern Underwriters v. Gallagher, supra.

We have carefully examined the record in this case. Because of our disposition of the case, it is not necessary to discuss the appellant's remaining points of error. For the reasons stated in the opinion, the judgment of the trial court is reversed and judgment is here rendered for the appellant.