**HARDWARE MUTUAL CASUALTY COMPANY, Appellant,**

v.

**Opal BROWN et al., Appellees.**

No. 14375.

Court of Civil Appeals of Texas.

San Antonio.

April 7, 1965.

Rehearing Denied May 12, 1965.

Groce, Hebdon, Fahey & Smith, Damon Ball, San Antonio, for appellant.

**54**

Carl Raymond Crites, Thomas H. Peterson, San Antonio, for appellees.

BARROW, Justice.

This is a workmen's compensation death case wherein the primary question is whether or not Robert W. Nichols was a Texas employee, under Art. 8306, § 19, Vernon's Ann.Civ.Stats., at the time he received fatal injuries in Camden, Arkansas. The jury found that he had the status of a Texas employee of Buckner Brick Company, Inc., hereinafter referred to as "Buckner," at the time of his death, and judgment was rendered on this verdict in favor of his surviving parents.

■ Appellant, Hardware Mutual Casualty Company, which carried workmen's compensation for Buckner under the Texas Compensation Act, asserts that the trial court erred in overruling its motion for instructed verdict and judgment non obstante veredicto. These are "no evidence" points, and require a review of the evidence in its most favorable light in support of the jury's finding, considering only the evidence and inferences which support the finding, and rejecting the evidence and inferences which are contrary to the finding. Fisher Construction Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126; Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.Law Rev. 361.

■ Robert W. Nichols was hired in Dallas, Texas, in September, 1962, but performed no work for Buckner in Texas prior to his death in Camden, Arkansas, on November 11, 1962. Both parties concede that this case is controlled by the applicable principles of law stated by the Supreme Court in Southern Underwriters v. Gallagher, 135 Tex. 41, 136 S.W.2d 590 (1940). It was there said:

"Under the plain provisions of Section 19 of Article 8306, supra, as interpreted and construed in the two cases above mentioned (Texas Employers' Ins. Ass'n. v. Volek, Tex.Com. App., 69 S.W.2d 33; Fidelity & Casualty Co. of New York v. McLaughlin, 134 Tex. 613, 135 S.W.2d 955), before an employee injured outside the territorial limits of this state can recover for such injury under our compensation statutes, he must prove that, at the time of such injury, he occupied the status of a Texas employee incidentally or temporarily sent out of the state to perform labor or services. The phrase, 'who has been hired in this State,' has no reference to the place where the contract of hiring took place. The test is: What was the status of the employee at the time of injury with regard to being a Texas employee? If, at such time, he occupied the status of a Texas employee, he is entitled to protection under our Compensation Statutes, even though he was working out of the state. On the other hand, if the employee is hired or contracted within this state to go out of this state to perform labor or services, he cannot claim protection under our Compensation Law merely because the contract was made or entered into in this state. Also, if a person is hired to work in this state,—that is, if, under the contract of hiring, such person becomes a Texas employee in the sense that it is contemplated that his services are to be rendered in this state, such employee is protected by our Compensation Law, even though he is first sent incidentally or temporarily out of the state to perform labor or services, and the mere fact that such employee performs his first services out of this state will not defeat his right to protection under our compensation statutes. In any event, before the statute under consideration can be applied in favor of an employee injured out of this state, it must be shown that he occupied the status of a Texas employee before leaving the state. Also, it must be further shown that while occupying such status he was incidentally or temporarily sent out of the state by the Texas employer

to perform labor or services for such employer."

See also, Hale v. Texas Emp. Ins. Ass'n., 150 Tex. 215, 239 S.W.2d 608.

Buckner was a Texas corporation with its principal office and place of business in Dallas, Texas, and was in the business of buying and selling bricks and allied building materials. It had never demolished a building prior to entering into a contract on August 22, 1962, with the Merchants & Planters Bank of Camden, Arkansas, to demolish four buildings in Camden, Arkansas. Glenn Magee was experienced in this line of work, having been foreman of a crew employed by Patton Wrecking Company prior to July, 1962. Magee was acquainted with Joe Tucker, president of Buckner, and after a visit to the job site with Tucker, Magee was employed in the first week of September, 1962, to superintend the demolishing operations in Camden. Magee was authorized to hire the crew necessary to perform this job.

Magee's former crew with Patton Wrecking Company consisted of Robert W. Nichols, his brother William C. Nichols, and his brother-in-law, James Johnston, all of whom lived in the same section of Dallas. This was not known to Tucker. Magee testified he told Tucker two brothers on his former crew lived in Hot Springs, Arkansas, and would be available for this job. The crew members visited each other frequently and, after several discussions, agreed to work with Magee on this job for Buckner. There is no evidence that Robert performed any work for Buckner prior to September 7, 1962, when he and his brother reported on the job in Camden, Arkansas. Robert was paid weekly with funds from a Buckner account in the Camden Bank. He worked on this job until a wall collapsed on November 11, 1962, inflicting fatal injuries on Robert and James Johnston.

There was testimony from William C. Nichols, his wife and Johnston's wife, that it was contemplated in the discussions among the crew that they would be returning to Dallas after about ninety days when the Camden job was completed, and that they would then perform other demolishing jobs for Buckner. Tucker denied that Buckner contemplated any other demolishing jobs at that time, although it did demolish a building in Dallas in February or March, 1964. Magee confirmed that he and his crew were not promised a job any place other than Camden, Arkansas. He did tell the crew that they would have a job as long as he had one. There was testimony that he performed no other job for Buckner, and at the time of the trial William C. Nichols was still working with Magee.

The facts in Southern Underwriters v. Gallagher are very analogous to those in this case. Gallagher was employed in Texas as an oil field worker, but was sent to New Mexico to work on a rig. He was promised that as soon as the company started a well in Texas he would be transferred to it. It was there held that this testimony regarding future work in Texas was, at most, a mere promise to make Gallagher a Texas employee in the future. The discussions among Magee's crew concerning their future employment in Texas by Buckner are less persuasive than the firm promise to Gallagher of a transfer to Texas.

It is our opinion that Robert W. Nichols, although hired in Texas, was hired to perform labor or services in Camden, Arkansas, and did not occupy the status of a Texas employee when he left the State. Southern Underwriters v. Gallagher, supra; Jordan v. Standard Accident Ins. Co., 339 S.W.2d 267, no wr. hist. Nichols was therefore not protected by the Texas compensation statutes at the time he sustained his fatal injuries. Appellant's point regarding the judgment for funeral expenses is immaterial.

The judgment of the trial court is reversed and here rendered that appellees take nothing by this suit.